**In re Paul Chris GIANAKAS, Debtor.**

**Karen GIANAKAS, Movant,**

v.

**Paul Chris GIANAKAS, Respondent.**

**Bankruptcy No. 88–02647.**

**Motion No. 88–6978–M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 9, 1989.

Richard W. Kelly, Jr., Pittsburgh, Pa., for Karen Gianakas.

Donald R. Calaiaro, Pittsburgh, Pa., for Paul Chris Gianakas.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter before the court is a Motion for Determination That Certain Payments are not Subject to Automatic Stay of 11 U.S.C. § 362 filed on behalf of Karen Gianakas (hereafter Movant), the former wife of Paul Chris Gianakas (hereafter Debtor).[1] At issue is whether Debtor's obligation to pay a second mortgage on the house in which Movant and the party's four minor children reside constitutes support. In addition, Debtor defaulted on the obligation and Movant made several payments to avoid foreclosure, which she seeks leave to collect from non-estate assets.

---

1. The Adversary Procedure Rules, Bankruptcy Rule 7001 *et seq.* were utilized in this matter. A determination that the obligation at issue is support or maintenance means that the debt is nondischargeable by operation of law. *See* 11 U.S.C. § 523(a)(5).

Debtor's obligation is set forth in an agreement dated December 24, 1982 (Movant Exhibit 2) which is incorporated in a Divorce Decree dated March 28, 1983 (Debtor Exhibit C), and pursuant to which:

1. Debtor conveyed the residence to Movant subject to certain encumbrances, including the first mortgage. Movant Exhibit 2 at ¶ 3A.

2. Debtor agreed "to assume and pay until satisfied the second mortgage ... held by C.I.T. Financial Resources." *Id.*

3. Debtor agreed to pay $200.00 per month for each child under the age of eighteen while the child resides with Movant. Movant Exhibit 2, ¶ 15A. Movant has custody of all four children. *Id.* at ¶ 14. The amount of the payment is subject to adjustment depending on Debtor's gross income. *Id.* at ¶ 15D.

4. Debtor agreed to maintain medical insurance for the children "so long as he is obliged to support the children under this agreement ... [and] to reimburse [Movant] for all medical and dental expenses necessarily expended or incurred on behalf of the children...." *Id.* at ¶ 20.

5. Debtor and Movant agreed to pay the costs of college education "commensurate with their respective financial circumstances and the needs and abilities of the children ... even though such costs may be incurred after the children reach majority age." *Id.* at ¶ 21. The costs include room, board, tuition, fees, books and four round trips to and from home each year. *Id.*

6. Debtor agreed to designate the children as irrevocable primary beneficiaries of life insurance policies insuring his life "for so long a period as he is bound to support said children under the terms of this agreement." *Id.* at ¶ 22.

Approximately two months prepetition the parties appeared before a hearing officer of the Family Division of the Allegheny County Court of Common Pleas. At that time the Debtor's monthly cash obligation for child support was increased from $800.00 to $860.00 per month.

After Debtor filed his bankruptcy petition the house was destroyed by fire. The check for the insurance proceeds was made payable to Movant, the first mortgage holder, and American General Financing, Inc., servicing agent for the second mortgagee. Movant filed an affidavit stating that the insurance coverage totaled $65,430.75, of which $674.26 was spent to secure the premises. The balance of $64,756.49 is deposited in a construction fund with First Federal Savings and Loan of Pittsburgh, the first mortgagee, and the house is being rebuilt pursuant to a construction contract at a cost of $64,900.00. This arrangement is with the consent of all the insurance policy beneficiaries. The principal balances of the three liens against the property, a first and second mortgage and a judgment, total $48,623.50.

Debtor argues that the obligation to pay the second mortgage is part of the property settlement and not part of his support obligation.[2] Debtor's argument is premised on the fact that the payment term for the second mortgage extends beyond the time that the youngest child will have reached the age of majority and on the fact that it is in the same paragraph of the agreement providing for conveyance of the residence to Movant.

That the term of the mortgage payments exceeds all children's minority is not determinative of whether the obligation to pay constitutes part of Debtor's obligation to support his children. The word "support" necessarily includes basic needs of life such as food, clothing and shelter. In the case at bar, Debtor's obligation extends to medical care and insurance which he must provide as long as he is required to support the children. The support obligation continues beyond the children's minor years in the event that they pursue higher education. Moreover, the second mortgage is due in full approximately one year after the youngest child reaches the age of 18.

---

**2.** Debtor refers to the fact that his alimony obligation to Movant has expired. This is irrelevant to the question of child support.

If this child pursues higher education or if any of the other children are still in school, the mortgage obligation is due to be satisfied before the support obligation terminates.

The determination of whether an obligation constitutes support is made according to bankruptcy law. H.Rep. 95–595, 95th Cong. 1st Sess. (1977) 363; S.Rep. No. 95–989, 95th Cong.2d Sess. (1978) 79, U.S. Code Cong. & Admin.News 1978, p. 5787. Although the United States Court of Appeals for the Third Circuit has not decided the issue, the Sixth Circuit set forth four factors in the oft-cited case of *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983), in connection with a dischargeability question. They are the intent of the parties, whether the contested provision has the effect of providing support, the effect on the dependent party's ability to meet daily necessities, and whether the amount is so excessive as to be unreasonable. If the court finds that the amount is unreasonable, only the portion which is excessive is dischargeable. *Id.* at 1109–11. These factors are not exclusive. *Id.* at 1111.

The Bankruptcy Court for the Eastern District of Pennsylvania has determined that the assessment of the nature of the obligation includes consideration of the parties' intent at the time the obligation was created, the financial circumstances and needs of both parties, and the function served by the obligation. *In re Miller,* 34 B.R. 289, 292 (Bankr.E.D.Pa.1983). The District Court for the Western District of Pennsylvania, citing *Miller,* recently held that the nature of the obligation is to be determined as of the time the obligation was created. *In re Chedrick,* 98 B.R. 731 (W.D.Pa., 1989) (Bloch, J.).

Here Debtor testified that at the time he entered into the agreement he intended that Movant and the children remain in the marital residence. Movant was not employed at the time.[3] Debtor agreed to as-

sume the second mortgage and to pay child support and alimony, all of which was needed to support and maintain his family. The monthly payment of the second mortgage of $225.00 was not then and is not now excessive or unreasonable.[4] We agree with the Sixth Circuit that when the effect of assumption of the debt is to provide what is necessary to ensure that the children's daily needs are satisfied and that without the assumption of the debt the necessities of life could not be maintained, the obligation is support. *See In re Calhoun,* 715 F.2d at 1109. Movant could not make the second mortgage payments at the time of the parties' agreement. If Debtor had not assumed the second mortgage the mortgagee would have foreclosed and Movant and children would have been without shelter.

The facts of *Matter of Allshouse,* 34 B.R. 512 (Bankr.W.D.Pa.1983), are quite similar to those at bar. There, the judgment entry of divorce included a paragraph, as did the agreement in this case, providing for "support of the minor children" and another paragraph awarding the wife the real estate. The wife assumed payment of the first mortgage and the husband-debtor assumed payment of the second mortgage. The court noted the existence of "widespread agreement that a spouse's obligation pursuant to a divorce decree to make mortgage payments upon the marital residence occupied by the ex-spouse and minor children is clearly in the nature of support and maintenance and is therefore nondischargeable...." *Id.* at 514 (citations omitted). *See also In re Thomas,* 21 B.R. 571 (Bankr.E.D.Pa.1982) (divorce decree incorporated alimony, support and a property settlement agreement requiring conveyance of marital residence by husband to wife and requiring husband to pay second and third mortgages). We agree that the obligation to support one's

---

**3.** Movant is employed now but Debtor earns in excess of four times what Movant earns.

**4.** Wife assumed the first mortgage obligation of $414.39 per month and an $8,000.00 obligation on a garage payable at $114.31 per month, which initially had to be paid out of the money

provided to her as alimony ($200.00 per month) and child support ($800.00 per month) because she was not employed. Debtor assumed business debts from a corporation he controlled and mortgages on a piece of investment property.

children includes providing shelter and find that this is what the parties intended upon entering into the agreement.

Debtor alternatively contends that because the second mortgagee is a named insured under the fire insurance policy and because the proceeds are sufficient to pay the first and second mortgages, his obligation is satisfied in accordance with the terms of the agreement. Debtor's argument is undermined in that the beneficiaries of the policy have agreed to use the proceeds to rebuild the house and, therefore, the mortgages will not be satisfied with the insurance proceeds. Furthermore, rebuilding would appear to be the most reasonable alternative consistent with the parties' initial intent to provide shelter for the children. If the insurance proceeds were used to pay off all the liens against the property, Movant would be left with $16,132.99. This sum, conceivably, could serve as a down payment on another residence but it is highly unlikely that Movant could obtain a mortgage comparable to the existing one, which has a balance due of only $27,000.00. Furthermore, her income is only $8,000.00 per year and her job is temporary. It is doubtful that she could obtain a mortgage at all under such circumstances.

Thus, to decree that the insurance proceeds must be applied to payment of the liens would be tantamount to making Movant and the children homeless in contravention of the parties' intent at the time the agreement was executed. This we refuse to do.

An appropriate order will be entered.

### ORDER

And now, to-wit, this 9th day of June, 1989, for the reasons set forth in the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED AND DECREED that Debtor's obligation to make payments specified in Paragraph 3A of the December 24, 1982 Agreement between Paul Chris Gianakas and Karen Gianakas is a support obligation which is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5). Therefore

the motion for determination that certain payments are not subject to the automatic stay of 11 U.S.C. § 362 is GRANTED, and Movant may proceed to collect said payments from property which is not property of the estate. 11 U.S.C. § 362(b)(2).