580 A.2d 13

**Nancy L. BUCCINO, Appellee,**

**v.**

**Michael A. BUCCINO, Appellant.**

Superior Court of Pennsylvania.

Argued April 25, 1990.

Filed Aug. 23, 1990.

Reargument Denied Oct. 11, 1990.

242

Robert J. Murphy, Scranton, for appellant.

George E. Clark, Scranton, for appellee.

Before MONTEMURO, BECK and FORD ELLIOTT, JJ.

BECK, Judge:

This case involves an issue which, although frequently litigated in federal courts, is rarely a subject for disposition in state courts. The issue is whether various liabilities imposed upon a former spouse in connection with a divorce decree are dischargeable in bankruptcy. Resolution of this issue depends on whether the disputed liability is in the nature of alimony or support or arises instead solely from the division of marital assets.

Pursuant to the Bankruptcy Code, support obligations, unlike debts for property settlements, are not subject to discharge in bankruptcy.[1] The trial court concluded that the obligations at issue here were in the nature of support and consequently not dischargeable. Following careful con-

---

1. The Bankruptcy Reform Act was enacted by Congress in 1978 and replaced the then-existing Title 11 of the United States Code. Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2549 (codified at 11 U.S.C. § 101 et seq. 1978) (the "Bankruptcy Code").

Section 523 of the Bankruptcy Code enumerates the types of debts which are not dischargeable and therefore are exceptions to the general discharge of obligations in bankruptcy. In particular, section 523(a)(5) provides an exception for those debts which are owed to a spouse, former spouse or child of the debtor which are in the nature of alimony, maintenance or support. (For full text of section 523(a)(5) and further discussion see pp. 249–252, *infra*.)

sideration of the record and a thorough review of both federal bankruptcy law and state domestic relations law, we agree and affirm.

The facts and procedural history underlying the instant appeal are as follows. The parties were married in 1979. At that time appellant Michael Buccino ("husband") was attending dentistry school in Chicago. While husband attended dental school, Nancy Buccino ("wife") supported the family. When husband graduated in 1982, the parties moved to Pennsylvania.[2] Wife continued working until the birth of the couple's only child in 1984.[3]

Shortly after the birth of their son, the parties began to experience marital difficulties. The trial court heard testimony regarding an extramarital affair by the husband, which the court apparently credited. As a result of the disharmony, wife and child eventually left the marital residence to live with her parents in Falmouth, Massachusetts. The separation which followed was unfortunately acrimonious and involved several bitter fights over custody of the child, who at the time was two years old. A divorce decree was entered in Susquehanna County in November, 1986. Among the divorce court's findings were the following: 1) wife had made substantial financial contributions to husband's career development and potential earning capacity (see footnote 3, supra); 2) wife's parents had made generous contributions to the couple including gifts totalling $7,500 and loans for the purchase of a mobile home and car totally $27,300; 3) at the time of the entry of the decree, wife had a temporary job as a seasonal restaurant worker earning $225 a week, $125 of which went towards child

**2.** Husband had been attending dentistry school on a full scholarship provided by the Public Health Service and the National Service Corporation. As a result, he was obligated to serve in an area which had a shortage of dentists after graduation.

**3.** The trial court concluded that between 1979 and 1985, wife contributed in excess of $70,000 to husband's schooling and career advancement in the form of supplementary family support during the course of husband's education and early professional practice. The court noted in its opinion, however, that based upon then-existing case law, it believed that it could not directly reimburse wife for these contributions.

care; 4) also at the time of the decree, husband had moved to Indiana to obtain a graduate degree in pediatric dentistry, where he earned $19,000 a year as a dental resident; and finally, 5) husband had "appropriated" the mobile marital home and moved it to Indiana for his own use.

The trial court's order was not separated into discrete subsections dealing with custody, child support[4], division of marital assets and debts, and alimony. Instead the order as a whole addressed each party's rights and obligations resulting from the dissolution of the marriage. Therefore, in narrative form, the trial court recognized that husband would not be in a position to pay alimony to wife while attending school on a limited income. Consequently, the court awarded alimony to wife in the amount of $200 per week for five years, commencing when husband completed "his present schooling". Further, recognizing that "[husband] will enjoy the opportunity of an excellent future income", the trial court ordered husband to pay wife one-half of the value of the gifts from her parents, i.e., $3750. In addition, the court ordered husband to pay to wife one-half the amount of equity in the mobile home, representing one-half the amount already paid back to wife's parents on the loan, i.e., $9,400. Finally, husband was liable to wife for one-half the value of his IRA and retirement plan. No exceptions were filed and no appeals were taken from this order.[5]

About six months following the entry of the divorce decree, husband filed a bankruptcy petition with the United States Bankruptcy Court in the Southern District of Indiana. His petition listed wife as a creditor and sought discharge of the liabilities imposed by the divorce decree. Wife sought relief from the bankruptcy court's automatic stay by filing a motion in bankruptcy court. This motion also requested that wife be permitted to proceed with a

4. Although custody and child support were disposed of in the court's order, these matters are not at issue in the instant appeal.

5. To the extent that the instant appeal makes reference to or challenges the propriety and equity of the original award, such allegations are wholly waived.

state court action to have the state court determine the dischargeability of husband's debts to her pursuant to the divorce. The bankruptcy court granted wife's motion and abstained from deciding the dischargeability of the marital obligations in order to allow the Susquehanna County court to rule on the issue. On October 6, 1989, the Susquehanna County court, Judge Donald O'Malley presiding, held a hearing on whether the obligations imposed by the divorce decree were dischargeable in bankruptcy. On October 23, 1989, the court issued an order finding that the debts in question were necessary for the support and maintenance of wife and the couple's minor child and therefore were not subject to discharge in bankruptcy. It is from this determination that husband appeals.

On appeal, husband asserts two claims of error. First, and most importantly, he argues that the trial court erroneously found that the debts in question were in the nature of support or alimony and therefore not dischargeable under federal bankruptcy law. Second, he claims that the trial court erred in hearing testimony regarding appellant's present financial circumstances rather than limiting evidence to that which existed at the time the divorce decree was entered.

As a threshold matter, we note that bankruptcy courts and state courts exercise concurrent jurisdiction over the question of whether a particular obligation is dischargeable under section 523(a)(5) of the bankruptcy code.[6] On

---

**6.** The Bankruptcy Code and accompanying federal bankruptcy rules specify the matters over which a bankruptcy court may exercise exclusive jurisdiction. The dischargeability of a debt under section 523(a)(5) regarding whether a marital obligation is in the nature of support or alimony is not among the enumerated questions given solely to bankruptcy courts. See 11 U.S.C. § 523(c) (West Supp.1986).

The official notes of the Advisory Committee on Bankruptcy Rules, in the notes accompanying Rule 4007(b), state:

Subdivision (b) does not contain a time limit for filing a complaint to determine the dischargeability of a type of debt listed as nondischargeable under § 523(a)(1), (3), (5), (7), (8), or (9). *Jurisdiction over this issue on these debts is held concurrently by the bankruptcy court and any appropriate non-bankruptcy forum.*

this basis the bankruptcy court granted wife's motion in the instant case to allow the state court to proceed with the determination of this issue. Consistent with the concept of concurrent jurisdiction is the application of collateral estoppel on the state court's judgment regarding the dischargeability of the debt. Thus, assuming dischargeability has been fully and fairly litigated in the state court, the debtor is barred from relitigating the issue in bankruptcy court.[7] In fact, the Indiana bankruptcy court which transferred the instant issue to Pennsylvania recognized that our judgment on dischargeability would be binding on it.[8]

While state and federal courts share jurisdiction to decide the matter of dischargeability under § 523(a)(5), it is also clear that the law which a state or a federal court must apply in making its determination is federal bankruptcy law, not state law.[9] This principle is far easier to state than it is to apply. On the one hand, it is a provision of the federal bankruptcy statute which the courts are being asked to interpret. However, as has been noted by numer-

Collier, Bankruptcy Rules 129 (pamphlet edition 1986); *See also* 3 Collier on Bankruptcy § 523.15[6] (15th ed. 1984); *In re Aurre* 60 B.R. 621, 624 (Bankr.S.D.N.Y.1986); *Zimmerman v. Zimmerman*, 322 Pa. Super. 121, 124, 469 A.2d 212, 213 n. 1 (1983); *Loyko v. Loyko*, 200 N.J.Super. 152, 490 A.2d 802 (1985).

7.  *See In re Aurre, supra; In re Grimshaw*, 57 B.R. 181, 182 (Bankr.N. D.Okla 1986); *Goss v. Goss*, 722 F.2d 599 (10th Cir.1983).

8.  The bankruptcy court ordered: "[T]hus, upon the conclusion of the Divorce Court proceeding to determine the dischargeability of the Marital Obligations, assuming the [established] conditions for the application of collateral estoppel are met, Creditor or Debtor may make a motion for summary judgment to the Court in the adversary proceeding filed by Debtor, and the Court will afford the decision of the Divorce Court the finality appropriate pursuant to the doctrine of collateral estoppel." Bankruptcy Court's Entry on Motion for Relief from Stay p. 9, February 22, 1989.

9.  The legislative history of the Bankruptcy Reform Act of 1978 is explicit regarding which law governs the issue of dischargeability under section 523(a)(5). The legislative reports accompanying the enactment of the new Code state: *What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.*
S.Rep. No. 95–989, 95th Cong., 2d Sess. 79, *reprinted in* [1978] U.S. Code Cong. & Admin.News 5787, 5963, 6320.

ous courts,[10] there is no federal domestic relations law nor could Congress have intended to transform the bankruptcy court into a federal divorce forum. Further, it was the state court which formulated the original marital obligations and these determinations obviously were made pursuant to state law. It would be impossible to disregard state domestic relations law in determining the nature of an obligation the very existence of which is dependent on state law.

What has emerged is an amalgam of federal bankruptcy law and state domestic relations principles. In assessing the nature of the underlying marital obligation at issue, courts will look to the intent, form, characteristics and purposes served by the imposed marital debt. Often but not always these features of the debt can be judged only on the basis of state matrimonial law. However, the characterization of the debt under state domestic relations law will not necessarily dispose of the dischargeability issue. Both the language of the statute (section 523(a)(5)) and the countless federal bankruptcy cases interpreting it dictate that a court eschew a rigid application of state law labels in favor of a search for the substance and function of the obligation involved. Moreover, this search must be conducted with an eye toward the purposes underlying the bankruptcy code and the exception to discharge created by § 523(a)(5).

Section 523(a)(5) of the Bankruptcy Code provides that: (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination

---

**10.** *See DeSylva v. Ballentine,* 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) (no federal law of domestic relations); *In re Spong,* 661 F.2d 6 (2nd Cir.1981); *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983) and cases cited therein.

made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

This section maintains a distinction historically recognized in bankruptcy law, i.e., that support obligations owed to a spouse, former spouse or child are not subject to discharge in bankruptcy because public policy recognizes the overriding need to ensure necessary financial support for the divorced spouse and children of a debtor who would otherwise be entitled to a general discharge in bankruptcy.[11] Although the bankruptcy code in general attempts to offer the debtor a "fresh start",[12] countervailing policies demand that marital obligations providing support remain exempt from discharge lest the bankruptcy laws create more societal problems than they solve.[13]

■ Thus, in determining whether specific obligations are excepted from discharge in bankruptcy, courts are admonished to balance two competing policies. One is the fresh start principle which is basic to bankruptcy law. The other

11. The United States Supreme Court in *Audubon v. Shufeldt*, 181 U.S. 575, 577–78, 21 S.Ct. 735, 736, 45 L.Ed. 1009 (1901) explained:
Alimony does not arise from any business transaction but from the relation of marriage. It is not founded on a contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction.... But its obligation in that respect does not reflect its nature.

12. It has often been noted that a fundamental goal of bankruptcy relief if to provide an economic "fresh start" to the honest debtor. *See, e.g., Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Alloway*, 37 B.R. 420 (Bankr.E.D.Pa.1984); *In re Hixson*, 23 B.R. 492 (Bankr.S.D.Ohio 1982).

13. One bankruptcy court noted: "[T]he former spouse rather than society should be responsible for the maintenance and support of members of the family which is split by divorce or separation." *In re Alloway*, 37 B.R. at 425. *See also In re Jenkins*, 94 B.R. 355, 358 (Bankr.E.D.Pa.1988); *In re Schmiel*, 94 B.R. 373, 377 (Bankr.E.D.Pa. 1988).

is the clear "Congressional policy of giving first priority to the adequate financial maintenance of a debtor's children and ex-spouse, above all consideration to the debtor's 'fresh start' ". *In re Schmiel,* 94 B.R. at 377. Given the tenacity of the alimony and support exception, its historical roots and underlying social policy, we agree with the *Schmiel* court that the rights of former spouses and of children should be "liberally protect[ed]" against discharge in bankruptcy.

Basic to the resolution of the dischargeability of a particular marital obligation is the concept that the substance and function of the debt will control rather than its form or appellation. Both the statutory language and case law make this approach abundantly clear. Section 523(a)(5)(B) (quoted above) states that the designation of a liability in a divorce decree or settlement agreement as "alimony, maintenance, or support" will not bar it from discharge "unless [it] is *actually in the nature of alimony, maintenance, or support*". (emphasis added). Conversely, if a specific obligation in connection with a divorce is labelled property division or "equitable distribution", such designation will not preclude a finding that the debt is, in fact, in the nature of alimony or support and, consequently, not dischargeable. *See In re Shine,* 802 F.2d 583 (1st Cir.1986); *In re Singer,* 787 F.2d 1033 (6th Cir.1986); *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983); *In re Messnick,* 104 B.R. 89, 93 (Bankr.E.D. Wisc.1989); *In re Jenkins, supra; In re Schmiel, supra.*

Universally, the difficulty in distinguishing between marital obligations which are in the nature of support and those which are purely divisions of property stems from two problems. First, in an ordinary case, "very often the parties have no intent to differentiate between an alimony debt and a property settlement and will view both as financial obligations arising from the separation or divorce." *In re Alloway,* 37 B.R. at 425. Therefore, bankruptcy courts often are faced with ascertaining the nature of an underlying obligation the legal consequences of which were never

contemplated by the parties.[14]   Second, and even more importantly, the evolution of domestic relations law has made it increasingly difficult to distinguish between alimony (or support) and property distribution.   Frequently, courts will resolve all economic issues arising from a divorce simultaneously and invariably will adjust alimony awards depending on the nature and amount of marital assets available for distribution.[15]   Therefore, it has been observed that property division often achieves the same goal as alimony, i.e., support, and that the current trend is to favor greater allocations of property in lieu of long-term alimony awards.[16]

Although the foregoing offers some guidance regarding the fundamental principles governing our inquiry in the

**14.** The bankruptcy court in *In re Wisniewski,* 109 B.R. 926, 930 (Bankr.E.D.Wisc.1989) stated: "Bankruptcy courts must fit those obligations into pigeon holes for which they were not intended, because neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose." *See also In re Messnick,* 104 B.R. 89, 93 (Bankr.E.D.Wisc.1989) ("This support/property division dichotomy must be applied to liabilities that do not neatly fit into either category and were not created with such categories in mind.").

**15.** Our Divorce Code is among those which direct divorce courts to consider various overlapping economic and non-economic factors both in awarding alimony and in distributing marital assets.   When fashioning an alimony award, a court must consider, *inter alia,* whether the property distributed through equitable distribution reasonably meets the needs of the dependent spouse.   23 Pa.Cons.Stat. Ann. § 501(b)(16) (Purdon Supp.1990).   Moreover, several of the factors the court must take into account when distributing marital property under § 401 of the Divorce Code are similar to alimony considerations and may have a "support" component.   The court must look to the parties' income, employability, marital standard of living, needs and economic circumstances.   It is plain that equitable distribution sometimes serves a support function and is not always a strict splitting of assets and liabilities.   Compare 23 Pa.Cons.Stat.Ann. § 401(d)(3), (9) and (10) with § 501(b)(1), (3), (8) and (10).

**16.** *See* Scheible, *Defining "Support" Under Bankruptcy Law: Revitalization of the "Necessaries" Doctrine,* 41 Vanderbilt L.Rev. 1 (1988).

In *In re Jenkins,* the bankruptcy court observed that the blurring of the distinction between alimony (or support) and property division led the Commission on the Bankruptcy Laws of the United States to recommend to Congress the elimination of the distinction and the enactment of an amendment making both types of marital obligations nondischargeable.   Congress rejected this proposal when it adopted the Bankruptcy Reform Act of 1978.   *In re Jenkins,* 94 B.R. at 358.

instant appeal, our research has revealed no clear and consistent test for determining whether a marital obligation is actually in the nature of support or if it is strictly a result of the division of property. Federal bankruptcy courts have developed several, often divergent, approaches to the issue. In the following discussion, we have attempted to isolate those factors which are common to the vast majority of cases which have confronted the issue of dischargeability under § 523(a)(5). Further, we endeavor to give effect to the underlying Congressional intent to protect support obligations from discharge in bankruptcy.

■ Despite the competing policies at stake here and notwithstanding the admitted difficulty in distinguishing between property division and support obligations, several criteria for deciding the issue do exist. By far the most important two concerns are: 1) the intentions of the parties and/or the divorce court at the time the obligation was formed; and 2) the effect and function of the obligation imposed. Obviously, the resolution of these two questions often will entail analysis of similar factors. Yet, as one bankruptcy court correctly noted [17], the reason that the intent of the parties or court could not be wholly dispositive of the dischargeability issue is that it would cede to them what is at heart a federal bankruptcy issue. Therefore, although all courts agree that intent is relevant in deciding the nature of the obligation for bankruptcy purposes, the fundamental inquiry is whether the obligations have the effect of providing necessary support such that a discharge in bankruptcy would contravene the public policy reflected in § 523(a)(5). "The bankruptcy inquiry ... is to determine the function of the debt. To the extent the obligation serves the financial purpose behind alimony (or support or maintenance) it is nondischargeable, whatever it is called. To the extent the debt is to divide property irrespective of financial need, it is dischargeable." *In re Jenkins*, 94 B.R. at 360.

17. *In re Jenkins*, 94 B.R. at 360.

■ In order to establish the intent and function of the marital obligation in question, bankruptcy courts have identified various factors which are relevant in determining the true nature of the debt. Several courts have formulated checklists of factors, none of which is intended to be all-inclusive.[18] Factors most often cited in the case law are: the label given to the obligation in the underlying instrument; the express terms of the obligation; the form and placement of the debt in the original agreement or decree; whether the debt terminates on the occurrence of death, remarriage, etc.; the economic disparity between the parties; the length of the marriage; whether there are minor children in the care of the creditor spouse; whether the support award would have been adequate absent the liability in question; the intention of the court to provide support to the creditor spouse or children; the age, employability and educational levels of the parties; the language of the decree and the inferences which can be drawn therefrom; whether the creditor spouse suffered an economic disadvantage as a result of the marriage; whether the debts are payable directly to the former spouse; the circumstances leading to the dissolution of the marriage; and the financial resources, actual or potential, of each spouse. *See In re Alloway*, 37 B.R. at 425 and cases cited therein; *see also In re Wisniewski*, 109 B.R. at 931 n. 2. Clearly, each of the above-cited factors will not be applicable in every case. Nor can we quantify with any precision the weight to be assigned to a given factor in a particular case. These factors serve only as guideposts in making the judgment on a case-by-case basis.

In the instant appeal there are four marital obligations at issue: 1) $200 per week for five years; 2) $3,750 representing one-half of the value of gifts to the parties by wife's parents; 3) $4,800 representing one-half of a pension fund in the name of husband; and 4) $9,400 representing one-half of the amount paid by the parties to acquire a mobile home

---

**18.** *See, e.g., In re Anderson*, 62 B.R. 448, 454–55 (Bankr.D.Minn.1986); *In re Neely*, 59 B.R. 189, 193 (Bankr.D.S.D.1986); *In re Coffman*, 52 B.R. 667, 674–75 (Bankr.D.Md.1985).

which the husband possessed from the time the parties were separated. All the obligations were payable directly to wife. In his bankruptcy petition, husband seeks discharge of all four debts.

■ Certainly, husband's assertion that the $200 per week five year obligation is dischargeable in bankruptcy need not detain us long. This debt has all the indicia of alimony and support. In awarding this payment to wife the trial court stated: "Due to the fact that Dr. Buccino has a limited income while he is attending school, *it is impossible to impose an award of alimony at the present time. However, at the completion of the [husband's] schooling, he is liable for payments of $200.00 per week to [wife] for a period of five years, until [wife] becomes accustomed to her present circumstances.*" Trial Court' Op. at 4, November 21, 1986.

The plain language of the court's decree indicated that it was delaying the start of *alimony* until such time as husband's income could increase. The award involved periodic payments for a fixed duration which were intended by the court to support wife for a length of time the court deemed appropriate to adjust economically to the end of her marriage. This is not a situation wherein the nature of the award is in any way ambiguous, thereby requiring us to delve beneath labels to ascertain the true substance of the obligation. In order to accept appellant's argument that this debt is not barred from discharge in bankruptcy, we would have to conclude that the trial court intended to leave wife here with no alimony award whatsoever. This improbable conclusion flies in the face of logic and equity.[19]

19. In an argument bordering on specious, appellant claims that the alimony award here was actually a strict division of property in that it was intended to "reimburse" wife for the financial contributions made to husband during his schooling. It is true that the trial court made note of wife's considerable financial sacrifice to her then-husband's career advancement. In addition, the court noted that the advanced degree husband had earned while being supported by wife had been held not to be a marital asset subject to distribution. In light of this, the trial court noted that its ability to "redress" the wife was "limited".

The remaining three obligations are not subject to quite as cursory resolution. Neither the express language, label nor form of these debts allow us readily to ascertain their true nature. Therefore, our inquiry is directed towards determining whether these debts were intended to create a support obligation and whether they functioned as support.

■ Our review of the record in the instant case, including the testimony given at the hearing held on October 6, 1989 on the dischargeability issue, convinces us that the debts in question served the purpose of alimony, i.e., they were to function as support for the creditor spouse.[20] Our conclusion is based on several factors. In the instant case, it is clear that the trial court was motivated by a desire to ensure minimal financial support to wife. The financial

See *Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (1990), *reversing,* 374 Pa.Super. 317, 542 A.2d 1374 (1988).

The contribution by one spouse to the education, training, or increased earning power of the other party has always been, and remains, a factor in the divorce court's determination of alimony. 23 Pa.Cons.Stat.Ann. § 501(b)(6) (Purdon Supp.1990). It does not follow, however, that the alimony award here was "based on repayment" and therefore was not meant as support. Every aspect of the court's decree, including the express language used, indicates that wife here was awarded spousal support in order to survive the economic impact of the dissolution of her marriage.

We find persuasive the reasoning of the bankruptcy court in *In re Stranathan,* 15 B.R. 223 (Bankr.D.Neb.1981) which held that a lump-sum award payable in installments to a former wife was in the nature of alimony and support *even though* it was meant, in part, to compensate wife for her contributions to her former husband's professional education. The court there observed that such a purpose does not exclude the award from the category of alimony or support since a majority of alimony awards involve recompense to the recipient spouse for efforts devoted to and resources spent on the marriage. Therefore, even if we were to agree with husband that the divorce court intended to compensate wife for contributions to his dentistry degree and career advancement, such a finding would not dissuade us also from finding that the award was in the nature of alimony or support. Husband's argument regarding the $200 per week payment fails under any analysis.

**20.** The standard of appellate review for bankruptcy court determinations of whether debts are exempt from discharge under § 523(a)(5) is that such a finding will be set aside only if "clearly erroneous". In applying federal bankruptcy law as a state court sharing concurrent jurisdiction, we use the same standard of review. *See In re Calhoun,* 715 F.2d 1103, 1110 (6th Cir.1983) (citation omitted).

resources of husband, both present and future, far exceeded those of the wife. The court noted that husband had a professional degree from which he was likely to reap substantial monetary return in the future. Husband had appropriated the parties' mobile home and therefore had a residence on which he could rely, owing, in part, to the generosity of wife's parents. He was pursuing an advanced degree which the court noted would further maximize his earning potential. The court also observed that husband had come into the marriage virtually penniless and had obtained his degree while living on the income generated by wife. In contrast, wife had no professional degree. At the time the decree was entered, husband was undeniably on the threshold of a substantial increase in earning capacity, while wife was supporting herself and her child as a restaurant worker and housekeeper. Wife also had custody of the couple's small child for whom she spent a disproportionate share of her income on child care.[21] The court-ordered amount of child support barely covered what the court found to be wife's weekly child care expenses. Wife had no separate residence of her own and, instead, lived with her parents on whose financial and child-care help she often depended. Whatever resources she brought to the marriage were used to support herself and her then-husband while he achieved his dental degree. There were virtually no assets in the marital estate to be distributed. In fact, in its opinion finding the disputed debts nondischargeable, the trial court found wife's need for support "compelling".

Therefore, based on the foregoing it is plain that the economic realities facing the parties at the time of the divorce favor the inference that the obligations imposed here constituted necessary support for the wife. The lump-sum nature of the debt, by itself, does not defeat the contention that the debt was in the nature of support for purposes of bankruptcy nondischargeability. *See In re*

---

**21.** The record at the hearing on dischargeability also revealed that husband was paying wife a fraction of the court-ordered amount of child support and was substantially in arrears.

*Cox,* 68 B.R. 307 (Bankr.M.D.Fla.1986) (lump-sum nature of payment not enough to establish dischargeability where there were minor children of the marriage shown to be in need of support and where obligation was imposed on debtor in connection with maintenance of marital home).

We reject appellant's argument that the debt imposed on him to pay wife the equivalent of one-half the gifts acquired from her parents was strictly a division of ownership of property. We are persuaded that closer examination refutes this contention. Property division is based on each parties' right to a fair share of the property accumulated during the marriage. In the instant case, there were few, if any, marital assets. The amount given to the couple by wife's parents in the form of gifts did not constitute a tangible asset which the parties could fairly divide. It is apparent that the divorce court used the amount of the gifts not as a means of splitting marital property, but rather as a vehicle to provide equitable and necessary support to the dependant spouse. The "ownership" of the gifts was not a matter in dispute nor was it an item for distribution. In fact, the gift money apparently had been spent on various living expenses and was long gone.[22] What remained was the court-imposed obligation of the husband to pay to wife an amount of money which would further provide her with reasonable support.

We hold that the form and amount of this additional support is far less significant than the function it was intended to perform. We find support for this conclusion in *In re Hoover,* 14 B.R. 592 (Bankr.N.D.Ohio 1981), in which the court resolved the dischargeability of an $11,600 promissory note from the husband to the wife. The *Hoover* court held that the debt was intended to provide for the "economic safety" of the creditor wife. Therefore, the bankruptcy court stated that it was irrelevant that the debt was structured as a property settlement or that its terms might so

---

**22.** In fact, the majority of the gift money was spent as a down payment on a Peugeot automobile which remained in husband's possession.

indicate. In *Hoover*, the court relied for its conclusion on factors similar to those which dictate the same result in this case. The court noted the parties disparate earning capacity, the husband's superior employability, the husband's history of success in business and the wife's lack of comparable skills and resources. Based on these factors the court determined that the debt was not dischargeable owing to its support function.[23]

In *In re Sermersheim*, 97 B.R. 885, 893 (Bankr.N.D.Ohio 1989), the bankruptcy court determined the dischargeability of credit card obligations for which husband had agreed to hold wife harmless. The obligation by husband had been assumed in a separation agreement under a provision entitled "Debts and Obligations". Again, despite the nomenclature used and the form of the obligations, the bankruptcy court found that the wife's income was insufficient to meet her expenses and that wife was dependent for financial assistance on family and friends. Accordingly the court found that husband's payment of the credit card debts, while appearing to be the mere assumption of a marital liability, had the effect of providing necessary support and was excepted from discharge in bankruptcy. The same result is mandated here.

Similarly, appellant's argument that the obligation representing half the value of the marital home was a pure

---

**23.** Appellant argues that in order to find that the debt in question was in the nature of support or alimony, this court must find that the parties mutually intended to create a support obligation. This is incorrect. In contested cases such as the instant one, the parties cannot and have not mutually agreed to anything. The divorce court fashions the decree on the basis of the testimony and the record before it in accordance with the law. Hence, the only relevant "intent" is the intent of the court after it has considered all the evidence and applied the law. *See In re Lineberry*, 55 B.R. 510, 516–17 (Bankr.W.D.Ky.1985), in which the court stated: "As this was a contested divorce case, with a two-day trial held in state court, this Court need only consider the intent of the court which created the obligation by its decree." The *Lineberry* opinion further noted: "In cases where it is clear that the state court has clearly and carefully considered the question of support in the context of a contested case ... then it is extremely unlikely that a bankruptcy court would make a contrary finding as to the true nature of the support obligation". *Id.* (*quoting In re Helm*, 48 B.R. 215, 220 n. 13 (Bankr.W.D.Ky.1984)).

distribution of a marital asset must fail. We have amply explored the record support for the conclusion that wife was unable to provide for herself and her child at the end of the marriage and, indeed, relied on her parents for the basic necessity of a home. In the meantime, husband had removed the mobile home which had been their marital residence, leaving wife with neither a home nor the wherewithal to replace it.

Bankruptcy courts have consistently held that the assumption of mortgage debts by a debtor-spouse which enables the creditor-spouse to provide for or remain in the marital residence are not dischargeable in bankruptcy because they are in the nature of support, alimony or maintenance. *See In re Sweeny,* 99 B.R. 192 (Bankr.D.Conn.1989); *In re Gianakas,* 100 B.R. 787 (Bankr.W.D.Pa.1989); *In re Coverdale,* 65 B.R. 126 (Bankr.M.D.Fla.1986); *In re Wright,* 51 B.R. 630 (Bankr.S.D.Ohio 1985); *In re Thomas,* 21 B.R. 571 (Bankr.E.D.Pa.1982).

We see no substantive difference between these cases and the case at bar. When a debtor assumes obligations, the underlying function of which is to provide reasonable support for his former spouse and children, the actual form of the debt will not preclude a finding of exemption from discharge. We find that here the obligation imposed by the divorce court was in lieu of support for shelter which was needed by the creditor spouse as a result of the debtor's appropriation of the marital home. In the view of this court the obligation here for the value of the marital home sufficiently resembles, in underlying rationale, the mortgage payments which bankruptcy courts almost uniformly have held are in the nature of support. We agree with the analysis of the bankruptcy court in *In re Thomas,* 21 B.R. at 574. In *Thomas,* the court found that the husband's agreement to pay second and third mortgages on his former spouse's home and to pay arrearages from a first mortgage was an obligation of support and therefore nondischargeable. The court there noted: "[I]t is reasonable to hold that the obligation to maintain and support a

family includes an obligation to keep a roof over their heads." *Id.* In another case similar to *Thomas*, a divorce decree provided for child support in one paragraph and in a separate section awarded the real estate to the wife. Along with the award of real estate was the provision that wife assume the first mortgage and husband assume the second and third mortgages on the home. The bankruptcy court rejected the husband's argument that the latter debt assumptions were dischargeable in bankruptcy. There the court reasoned that, despite the form of the obligation, the debt was clearly in the nature of support because it served the function of providing shelter for the former spouse and children. *In re Allshouse*, 34 B.R. 512, 514 (Bankr.W.D.Pa. 1983); *see also In re Gianakas, supra.* Here the debtor's actions deprived the creditor spouse of a necessary aspect of support, i.e., shelter.[24] The trial court's conclusion that he should pay her half the value of the home clearly was intended to and did function as support and as such we agree that the debt in connection with the home is nondischargeable.

**24.** In an analogous case, *In re Swiczkowski*, 84 B.R. 487 (Bankr.N.D. Ohio 1988), the husband was ordered in a divorce decree to make car payments on the family car which the divorce court gave to wife. When the husband defaulted on the periodic payments, the divorce court ordered that husband make a lump sum payment to the wife, representing the value of the car. Thereafter, husband filed for bankruptcy and sought discharge of the above-cited debt. In the meantime, the car had been repossessed due to non-payment. In holding that the car debt was not dischargeable, the bankruptcy court noted the former spouse's need for reliable transportation and concluded that such need was an essential element of support. The court then went on to consider the impact of the car's repossession. In concluding that the repossession was irrelevant, the court pointed out the inequity of allowing the husband to control the nature of the obligation simply by failing to pay the court-ordered amounts. The court stated: "[R]eliable transportation being an essential commodity for a family with minor children, the vehicle would have provided necessary support to the Debtor's family if the obligation had been paid and the vehicle had not been repossessed." *Id.* at 492.

In our case, had husband not appropriated the family home for his own use, the home or the proceeds therefrom *would have* provided necessary support for wife and child. Due to husband's actions the divorce court had no alternative but to provide said support in the manner it did.

We emphasize that the thrust of our inquiry into the dischargeability of the disputed debt is whether, in a particular case, the debt was created to perform a support function. This inquiry must occur case-by-case and must take into account all relevant economic and non-economic factors, including the living standards of the parties. *See In re Lineberry*, 55 B.R. 510, 517 (Bankr.W.D.Ky.1985). In the instant case the divorce court considered the support award in light of harsh economic realities facing the wife after divorce. However, an award need not furnish only the bare necessities of life in order to be exempt from discharge. The policy underlying the exemption stems from the recognition of the debtor's duty to provide for the well-being of his or her family. Marital obligations consistent with that duty will constitute nondischargeable support even if, in a given case, they exceed what would be minimally necessary for the recipient's survival.

Finally, we turn to the dischargeability of the obligation to pay wife half the value of the pension fund. At first glance, this debt appears to be more in the nature of a pure division of property. However, careful analysis persuades us that this debt was based on wife's need for support and her evident lack of immediate financial resources. As such, the debt will not be discharged in bankruptcy.

Central to our resolution of the issue is the timing of the obligations imposed by the divorce decree. While the $200 a week alimony award and the debts for the gifts and the home were made payable by the court at the completion of husband's graduate professional education, wife was entitled to half the value of the pension fund immediately upon separation. Therefore, the only award wife could use for necessary support upon the entry of the decree was the $4,800 owed her as her share of the retirement fund. Bankruptcy courts uniformly will consider whether, at the time the decree was entered, support would have been inadequate without the obligation in question. *See, e.g., In re Messnick*, 104 B.R. at 94; *In re Lineberry*, 55 B.R. at 517 ("... the nonexistence of other property may make

other forms of support payments necessary."). In the instant case, without the debt arising from the value of the pension fund, wife would have been without urgently needed support until husband had completed his graduate training. Under these circumstances, it is evident that the pension fund/IRA money was intended for support until such time as the other obligations imposed by the court could be met by husband. *Cf. Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1986) (where circumstances indicate recipient spouse needs support and a decree fails to provide same, it can be presumed that a so-called property settlement is intended for support); *accord In re Singer*, 787 F.2d at 1035.

We next turn to appellant's claim of error regarding the trial court's admission of testimony of the parties' present circumstances. Specifically husband claims that it was error for the trial court to hear evidence of his current income since the only relevant time frame for purposes of dischargeability is the time the obligation was created. Appellant raises an issue which has been the subject of considerable controversy in federal bankruptcy law. While some courts adhere to the approach formulated in the frequently-cited *Calhoun* case [25], several others have rejected the *Calhoun* analysis. *Calhoun* would allow the bankruptcy court to look both to the debtor's present financial circumstances and the economic conditions which prevailed at the time the decree was entered. The *Calhoun* court reasoned that the debt must be viewed in light of the debtor's present ability to pay it because the bankruptcy court should be in a position to discharge a continuing obligation which is "manifestly unreasonable in view of the earning power and financial status of the debtor spouse". *Calhoun*, 715 F.2d at 1110.

In rejecting the *Calhoun* approach, many courts point out the danger of transforming the bankruptcy courts into "super divorce courts". Thus, the cases which urge the opposite approach stress that the bankruptcy courts are not

---

**25.** *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983).

entrusted "to actually determine the amount of alimony or support appropriate to the circumstances". *In re Jenkins,* 94 B.R. at 360 (citation omitted). In *In re Harrell,* 754 F.2d 902, 906 (11th Cir.1985), the Eleventh Circuit rejected *Calhoun* and stated:

> The statutory language [of § 523(a)(5) ] suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support. The language does not suggest a precise inquiry into financial maintenance to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change.

We conclude that *Harrell* and *Jenkins* represent the better view. Therefore, we hold that circumstances present at the time of the divorce decree are not the proper focus in dischargeability decisions. We agree with the *Jenkins* court's conclusion that, absent an unmistakable mandate from Congress, bankruptcy courts should not be in a position to modify state-created matrimonial obligations. If occasionally a situation arises wherein a nondischargeable support obligation far exceeds either the reasonable needs of the recipient or the ability of the debtor to pay, the remedy lies in seeking relief in the state divorce forum:

> If the original state court award was excessive, it may be addressed by a state court appeal. If the circumstances of the parties change warranting an adjustment of the obligation, state law allows a party to request a modification.

*Jenkins,* 94 B.R. at 360–61 (citations omitted).

Despite our holding on this issue, however, appellant is not entitled to the relief he seeks. Although the lower court admitted minimal testimony regarding husband's current financial status and thus arguably contravened the principle announced here, it is clear that such testimony was not a factor in his ruling. The court's order abundantly establishes that its decision on dischargeability was based on the intent and function underlying the marital

obligations at the time they were created. The court's findings were that "the financial obligations imposed upon [husband] were clearly necessary for the support and maintenance of [wife] and her child" and that "[wife's] need for support prior to and at the time of the divorce decree was compelling". The only relevance to the court's mention of husband current financial status was to note that he indeed had accomplished what the court in its original decree had already considered, i.e., husband's opportunity for an excellent future income. This comment in no way altered the nature of the obligation originally imposed by the court nor did the testimony on current income undermine the validity of the court's conclusion on dischargeability.

In light of the foregoing, we conclude that the trial court correctly determined that the marital debts at issue here were in the nature of support or alimony and were not dischargeable in bankruptcy.

Order affirmed.