William W. MILLAR, Appellant–
Petitioner,

v.

Marolyn M. MILLAR, Appellee–
Respondent.

No. 71A04–9008–CV–364.

Court of Appeals of Indiana,
Fourth District.

Nov. 27, 1991.

Rehearing Denied Jan. 8, 1992.

Robert J. Palmer, John H. Peddycord, May Oberfell & Lorber, South Bend, for appellant-petitioner.

R. William Jonas, Jr., Hammerschmidt Bonewitz Amaral & Jonas, Christopher C. Potts, South Bend, for appellee-respondent.

CHEZEM, Judge.

### Case Summary

Petitioner–Appellant, William M. Millar (William), appeals from the final decree entered in the dissolution of his marriage to Respondent–Appellee, Marolyn M. Millar (Marolyn). We affirm in part, and reverse and remand in part.

### Issues

William presents six (6) issues for our review, which we consolidate and restate as follows:

I. Did the trial court err in determining that William's payments to Marolyn were "in the nature of maintenance?"

II. Did the trial court err in valuing the marital estate?

III. Did the trial court abuse its discretion in ordering William to pay attorney fees and appraisal costs for Marolyn?

### Facts and Procedural History

William and Marolyn were married for 25 years. Their two (2) children are now emancipated. William is a full-time farmer who supplements his income through custom farming and working for his local school board. Marolyn was a homemaker for many years, and has worked outside the home since 1977.

In March of 1987, William and Marolyn filed for Chapter 11 bankruptcy. Their plan of reorganization was approved on March 6, 1989. The plan requires unsecured creditors to be paid over three (3) years, and secured creditors paid over longer periods.

On June 20, 1989, William filed his Verified Petition for Dissolution of Marriage. The bench trial occurred in February of 1990. After taking the matter under advisement, the court issued its Order on April 6, 1990. The court determined the fair market value of the real property to be $319,320. After considering the value of the other assets and liabilities, the equity was determined to be $157,713. The court divided this in half to reach $78,856, which it then ordered William to pay to Marolyn in equal annual payments over three (3) years. These payments were found to be "in the nature of maintenance." William was also ordered to pay the attorney fees and appraisal costs incurred by Marolyn.

### Discussion and Decision

#### I

William first argues the trial court erred when it stated that William's payments to Marolyn were "maintenance." We agree.

In its final decree, the trial court stated "[it] further finds that the Husband's obligations as described herein are in the nature of maintenance as more particularly described under 523(a)(5) of the United States Bankruptcy Code." But the court did not set forth *any* findings of fact or conclusions of law to support its conclusion regarding "maintenance." Under such circumstances, we must remand for further proceedings consistent with the pertinent statute, Ind.Code § 31–1–11.5–11(e).[1]

---

1. We note that I.C. 31–1–11.5–11(e) sets forth a limited set of circumstances in which a trial court may award maintenance. William is correct that merely characterizing his payments to Marolyn as "maintenance" does not make it so. Under the law, "the substance and function of the debt will control rather than its form or appellation." *Buccino v. Buccino,* (1990), 397 Pa.Super. 241, 580 A.2d 13, 18. In other words, if the payments are a property distribution, then a trial court's characterization of them as "maintenance" is properly disregarded.

Furthermore, we recently discussed the factors to be considered in determining whether there has been a property distribution or an award of maintenance. The factors indicating a property distribution include: "the payments are for a sum certain payable over a definite period of time; ... there are no provisions for modification based on future events; the obligation to make payments survives the death of the parties; ... the provisions call for interest; and the award does not exceed the value of the marital assets at the time of dissolution." The factors indicating an award of maintenance include: "the designation as maintenance; provisions terminating the payments upon the death of either party; payments made from future income; ... provisions for termination upon remarriage; ... provisions calling for modification based upon future events; and payments for an indefinite period of time." *Cox v. Cox, supra.*

Lastly, we are unpersuaded by William's argument that the trial court's statement characteriz-

*Dahnke v. Dahnke* (1991), Ind.App., 571 N.E.2d 1278, 1281; *Cox v. Cox* (1991), Ind. App., 580 N.E.2d 344. The trial court must set forth findings to support its award of maintenance or vacate its finding of maintenance for the entry of a property distribution award.

II

■ William next argues the trial court erred in valuing the marital estate. In particular, he states "the trial court abused its discretion in assigning values to the assets and liabilities inasmuch as there is absolutely no evidence in the record [which] supports the trial court's valuation." William also states:

The trial court's specific errors involve three areas of the marital estate. The trial court over-valued the fair market value of the real property. The trial court also overvalued the mower and planter listed in its statement of assets. The trial court further substantially undervalued the liabilities of the marital estate.

■ Of course, the trial court has broad discretion in valuing the property in a dissolution of marriage proceeding. *Neffle v. Neffle* (1985), Ind.App., 483 N.E.2d 767, 770, *reh. denied, trans. denied.* On appeal, we will not reweigh the evidence or judge the credibility of witnesses. *Id.*

Our task is to determine if there is sufficient evidence to support the trial court's conclusion.

There is evidence in the record which supports the trial court's valuation. With respect to the real property, the evidence at trial indicated a value anywhere between $275,000 and $373,000. The trial court determined the value to be $319,320, which is within the range of the evidence. Therefore, the trial court's determination is *not* clearly against the logic and effect of the facts and circumstances before it. *See, Porter v. Porter* (1988), Ind.App., 526 N.E.2d 219, *reh. denied, trans. denied.*

With respect to the mower and planter, there is evidence in the record supporting the trial court's valuation. Marolyn valued these items at $20,850 in her Contentions. Once again, William asks us to reweigh the evidence and judge the credibility of witnesses. We will not do this. *Neffle, supra.*

Lastly, there is sufficient evidence to support the trial court's determination as to the amount of liabilities. At trial, William provided testimony which established that the amount of the liabilities had been substantially reduced *since* he prepared his Exhibit B. Indeed, his testimony provides ample support for the trial court's determination in this regard. We find no error here.[2]

ing the payments as "maintenance" was an improper "advisory opinion." The law is clear that if William files for bankruptcy, then the trial court's "intent" as to the nature of the payments is relevant in determining whether the payments are dischargeable. Indeed, the bankruptcy court must try to determine that "intent." *Buccino, supra.* Therefore, it would be entirely appropriate under the circumstances of this case for the trial court to set forth its "intent" as to the nature of the payments to Marolyn.

2. William also argues that the trial court erred by relying on Marolyn's Exhibit B (Contentions) because it was never admitted into evidence. We disagree. At the beginning of the bench trial, the court suggested that both parties have their witnesses adopt their contentions on direct examination in order to save time. The court then noted that the parties had filed their "statement[s] of marital assets, expenses and proposals as to distribution," which statement was Marolyn's Contentions. In any event, Marolyn

sufficiently adopted her Contentions during her direct examination, as evidenced by the following colloquy:

Q: Well, let me ask it this way, Marolyn: Have you had an opportunity to review the numbers that we have presented to the Court?
A: Yes, I have.
Q: Do you feel those numbers accurately reflect the value of the assets?
A: Yes, I do.

     \*    \*    \*    \*    \*    \*

Q: For the record, Mrs. Millar, in the contentions that have been filed by you, have you had an opportunity to review the revenue and expense figures?
A: Yes, I have.

In addition, William argues that the trial court erred by valuing the assets and liabilities on different dates. This argument is wholly without merit. The trial court did *not* value the assets and liabilities on different dates. In its final decree, the trial court specifically stated that "the assets and debts as of February 19,

### III

William next argues the trial court erred in ordering him to pay the attorney fees and appraisal costs incurred by Marolyn. We disagree.

We first note that Ind.Code 31–1–11.5–16 allows the trial court to assess reasonable attorney fees against one party in a dissolution of marriage proceeding, as follows:

The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees ...

The law is well-established that the trial courts have broad discretion in awarding attorney fees and costs, and we will reverse only upon a showing of a clear abuse of that discretion. *Rump v. Rump* (1988), Ind.App., 526 N.E.2d 1045, 1047, *trans. denied.*

The trial court did not abuse its discretion in this case. William was ordered to pay Marolyn's attorney fees of $3,492, and her appraisal expenses of $690. Considering the court's finding regarding the amount of equity in the farm, William clearly has the resources to pay these fees. We note that the award is also supported by the finding that "there is a disparity between the Husband's earning potential as a college educated farmer and the Wife's income potential as a secretary or cook." Marolyn earned only $15,000 in 1989. The trial court did not err.

Therefore, we affirm as to Issues II and III, and reverse and remand as to Issue I.

CONOVER, J., concurs.

RATLIFF, C.J., concurs in part and dissents in part with separate opinion.

RATLIFF, Chief Judge, concurring in part and dissenting in part.

When the trial court determined the net value of all of the property of the parties to be $157,713, and then divided that amount exactly in half and ordered the husband to pay $78,856 to the wife over a three year period, the court made a property settlement—a division of the property of the parties, and did not award "maintenance". Calling a division of the property "maintenance" does not make it so. The division here has all of the attributes of property settlement and none of the attributes of maintenance. *See Coster v. Coster* (1983), Ind.App., 452 N.E.2d 397.

Because I believe it clear that the award in this case is property division and not maintenance, we should simply so hold. There is no need to remand for further findings, and I dissent to the majority opinion to the extent it orders remand. In all other respects, I concur in the majority opinion.

---

1989, are ..." Of course, the trial in this case ended on February 19, 1989. Therefore, the assets and liabilities were *not* valued on different dates; they were given their values *as of February 19, 1989.*

