542 A.2d 1374

**Nancy G. BOLD, Appellee,**

v.

**Richard A. BOLD, Appellant.**

**Nancy G. BOLD, Appellant,**

v.

**Richard A. BOLD, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 7, 1987.

Filed May 5, 1988.

Reargument Denied June 22, 1988.

318

David A. Eisenberg, Allentown, for appellant (at 1047) and appellee (at 1226).

John R. Greisamer, Allentown, for appellant (at 1226) and appellee (at 1047).

Before ROWLEY, WIEAND and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

In *Hodge v. Hodge*, 513 Pa. 264, 520 A.2d 15 (1986), the Supreme Court of Pennsylvania was asked to determine whether Section 501 of the Divorce Code, 23 P.S. § 501, permits an award of "reimbursement alimony" to a supporting spouse for contributions made to a student spouse during the course of a marriage. In this case, we are asked to examine *Hodge* and to fashion an equitable award under Section 401 of the Divorce Code to reimburse a supporting spouse for the contributions made while the other spouse pursued an academic degree. Having carefully considered the argument advanced under *Hodge, supra,* and, in light of our decision in *Lehmicke v. Lehmicke*, 339 Pa.Super. 559, 489 A.2d 782 (1985), we are constrained to vacate the order granting appellant an award of "reimbursement equity" and to remand the case for further proceedings.

## I. Background

Nancy G. Bold and Richard A. Bold were married on May 25, 1974.[1] At the time of the marriage, Nancy had attained

---

1. No children were born of the marriage.

a bachelor of science degree in medical technology and had been employed as a medical technician. In 1974 she earned between $12,000–13,000 annually, and in 1979 she accepted employment at a salary of $19,000. Nancy brought approximately $2,500 into the marriage. When Richard entered the marriage he had completed a few years of college and the police academy in Los Angeles, California. He had been employed at various odd jobs such as sales, construction and automobile repair but was unemployed due to "layoffs" at those jobs. Mr. Bold entered the marriage with approximately $700, some personal property and a camper.

From 1974 through 1979, the parties lived in California. In May of 1977, they purchased a home there for $57,480: Mrs. Bold contributed $500 to the down payment, the parties borrowed $5,000 from Mr. Bold's mother and they took a mortgage in the amount of $49,000. The parties sold the house in July of 1979 for $84,040, realizing a profit of $24,984.40.

Starting in September of 1974 and until 1976, Mr. Bold attended college pursuing courses in business and geology, and from 1976 through May of 1979, he attended the Los Angeles College of Chiropractic. While pursuing a degree, Mr. Bold received Veterans Administration educational benefits which totaled in excess of $12,000. During that same time, tuition and book expenses totaled approximately $14,-300. Mr. Bold also received a student loan in the amount of $1,187.15 which was repaid within nine months of graduation. While pursuing his studies, Mr. Bold earned approximately $16,000 at various odd jobs. During the five years that Mr. Bold was in school, Mrs. Bold earned in excess of $80,000.

Although Mr. Bold was in school, the couple enjoyed numerous outings, camping trips, vacations, and sightseeing and skiing trips. The parties also dined out and entertained at home. In total, the parties expended approximately $106,612 between 1974 and 1979.

Mr. Bold graduated from chiropractic school in May of 1979. In August of that year, the parties sold the house in

California and moved to Pennsylvania where they purchased a house for $55,000. Upon moving to Pennsylvania, Mrs. Bold obtained a job at an initial salary of $17,000 and Mr. Bold found work at a weekly salary of $200. In February of 1980, Mr. Bold left his job and opened his own chiropractic practice. There is no doubt that his education has increased his earnings potential. In 1984, for example, Mr. Bold had gross receipts of $87,394 and a net profit of $31,934 from his chiropractic practice.

On October 1, 1981, Mrs. Bold moved out of the marital home at the request of Mr. Bold. She relocated to a one-bedroom apartment where she enjoys few modern facilities. Mrs. Bold has remained at her present job even though there is no potential for a significant increase in earnings. She has, however, attended college since January of 1985 in pursuit of a master's degree, a move which will increase her earning potential. Her employer pays two-thirds of her educational costs.

The assets available for distribution are as follows. Furnishings and equipment at Mr. Bold's office are valued at $8,095. The parties jointly own two cars which have a combined total value of $5,500. In addition, Mrs. Bold obtained stock worth $6,887 from her employer and the balances in the several bank accounts total $540. In 1984 the marital house was valued at $59,000, and at the time of the separation, the equity value of the house was $15,863.35. From the time the parties were separated in 1981 until the time of the divorce in 1984, Mr. Bold has paid insurance, mortgage and tax bills totaling $4,433.

The record also contains the following summary of the earnings of Mrs. Bold and the net profit of Mr. Bold, respectively:

1981 — $19,503/$18,542;
1982 — $22,161/$32,254;
1983 — $23,700/$37,023;
1984 — $26,363/$31,934 (plus interest income of $1,120).

On May 12, 1981, Mrs. Bold filed a complaint seeking a divorce, equitable distribution, counsel fees, costs and expenses. A bifurcated divorce decree was entered by stipulation of the parties on April 26, 1984. A master was appointed to hear the economic claims and, after several hearings, a report and recommendation was filed on January 24, 1986. Mr. Bold subsequently filed timely exceptions to the master's report. Arguments were heard and, on March 23, 1987, the lower court issued an opinion and the following decree:

## EQUITABLE DISTRIBUTION

NOW, March 23, 1986, IT IS HEREBY ORDERED AND DECREED that Nancy G. Bold, Plaintiff, execute a deed transferring all her right, title and interest to the premises known as 1803 Saratoga Court, Allentown, Lehigh County, Pennsylvania to Richard A. Bold, Defendant, upon notice of entry of this decree and that said deed shall be held in escrow by plaintiff's attorney until defendant pays to plaintiff the sum of $9,200.00.

IT IS FURTHER ORDERED that plaintiff shall retain as her separate property the following:

(a) Bristol Myers and Smith Kline stock — $6,887.00
(b) 1974 Volkswagen — 2,500.00
(c) All personal property listed on Exhibit "C" of the Master's Report followed by the designation "N" — 4,680.00
Total — $14,067.00

IT IS FURTHER ORDERED that defendant shall retain as his separate property the following:

(a) All office furnishings and equipment — $8,095.00
(b) 1979 Dodge Aspen — 3,000.00
(c) All personal property listed on Exhibit "C" of the Master's Report followed by the designation "R" — 4,002.00
(d) First National Bank Accounts — 540.00
Total — $15,637.00

## EQUITY AWARD

IT IS FURTHER ORDERED that defendant pay to plaintiff the sum of $33,000.00 in reimbursement equity in equal monthly installments of $550.00 without interest to commence upon entry of this decree and continue sixty (60) months; should any installment be more than five (5) days overdue, defendant shall pay interest at ten percent (10%) per annum on the over due amount.

## COUNSEL FEES, COSTS & EXPENSES

IT IS FURTHER ORDERED that defendant pay the sum of $5,444.27 to plaintiff's counsel, John Greisamer, Esquire, towards plaintiff's counsel fees, costs and expenses and that plaintiff be responsible for all other outstanding fees and costs. Said payment to be made within forty-five (45) days of the entry of this decree.

Both parties timely filed appeals from this final decree.[2]

## II. Appeal of Mr. Bold

We turn first to the appeal of Mr. Bold which raises three claims of error: (1) a challenge to the award of "reimbursement equity"; (2) an attack on the order directing that he reimburse Mrs. Bold for one-half of her counsel fees; and (3) a claim that the lower court forced him into a "buy-out" arrangement and failed to credit him for expenses incurred in preserving the marital property following the separation.

Before addressing the merits of these contentions, we are reminded that our standard of review of such claims is a narrow one. We may not reverse the order before us absent an abuse of discretion by the lower court. *Campbell v. Campbell*, 357 Pa.Super. 483, 489–90, 516 A.2d 363,

2. On April 28, 1987, two petitions were filed in the lower court: the master petitioned for compensation and appellee requested that the court direct appellant to pay interim counsel fees, costs and expenses of not less than fifty percent of the amount so required by the order of March 23, 1987. Acting upon these petitions, the lower court entered an order on April 28, 1987, directing, *inter alia*, that this appeal shall not act as a supersedeas and that appellant immediately pay $3,000 of the counsel fees incurred by appellee or turn over the stock subjected to distribution. This order is not now before us on appeal.

366 (1986) (*en banc*); *Remick v. Remick,* 310 Pa.Super. 23, 28–30, 456 A.2d 163, 165–166 (1983) (*en banc*). " 'An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.... However, an abuse of discretion will be found by this Court if the trial court failed to follow proper legal procedure or misapplied the law.' " *Sergi v. Sergi,* 351 Pa.Super. 588, 591, 506 A.2d 928, 930 (1986), *quoting, Braderman v. Braderman,* 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985). In any event, we may not disturb any of the lower court's factual findings which are based upon credible evidence. *Campbell,* 357 Pa.Super. at 489–90, 516 A.2d at 366.

## A.

In his appeal, Mr. Bold first contends that the court erred in making an award of "reimbursement equity," i.e., contribution to Mrs. Bold for the financial and other support given while Mr. Bold continued his education. Under the facts of this case we are constrained to agree with this contention.

Summarizing the facts, this case presents the not unfamiliar situation in which one spouse works toward a professional degree while the other spouse provides support and maintains the home. Mr. Bold spent the first five years of the marriage completing his college education. During that time, his earnings were minimal, averaging approximately $4,000 per year. On the other hand, Mrs. Bold earned in excess of $80,000 and used the money to support the household. The marriage ended at a point in time when Mr. Bold's earning potential was just being realized and before the couple could enjoy the fruits of their labors. While Mr. Bold has embarked upon a lucrative career path, Mrs. Bold anticipates no likelihood of increasing her earnings absent an advanced degree which, she testified, would require five years of schooling.

After hearing the testimony and making factual findings, the master awarded Mrs. Bold the sum of $33,000 as "equitable alimony." Relying upon the recent pronounce-

ment of the Supreme Court of Pennsylvania in *Hodge v. Hodge*, 513 Pa. 264, 520 A.2d 15 (1986), and the decision by this Court in *Lehmicke v. Lehmicke*, 339 Pa.Super. 559, 489 A.2d 782 (1985), the lower court rejected the master's recommendation but awarded the sum of $33,000 as "reimbursement equity." Mr. Bold now contends the award is neither authorized by case law nor supported by the facts. Conversely, Mrs. Bold argues that the equitable remedies recognized in *Hodge*[3] and *Lehmicke* are appropriate here.[4] The initial question before us then is whether the *Hodge* and *Lehmicke* decisions are applicable in this case.

In *Hodge v. Hodge*, 513 Pa. 264, 520 A.2d 15 (1986), the Supreme Court of Pennsylvania was asked to examine the propriety of an order granting a working spouse's request for alimony as compensation for the support given to her spouse while he pursued his education. *Id.*, 513 Pa. at 269, 520 A.2d at 17. Speaking for a divided Court, Mr. Justice Zappala examined Section 501 of the Divorce Code, 23 P.S. §§ 501 *et seq.*, and determined that alimony may only be granted for the purpose of rehabilitation, not reimbursement. *Id.*, 513 Pa. at 271, 520 A.2d at 18. Consequently, Justice Zappala concluded that the Superior Court erred in upholding an equitable remedy in the nature of alimony pursuant to Section 501. *Id.*, 513 Pa. at 271–72, 520 A.2d at 19. Because the Court was divided on this issue, however, the decision of the Superior Court was affirmed. *Hodge*, 513 Pa. at 272, 520 A.2d at 19.

We recognize the significance of the *Hodge* decisions to the matter at hand; however, a question regarding an

**3.** Mrs. Bold relies upon the Superior Court decision in *Hodge v. Hodge*, 337 Pa.Super. 151, 486 A.2d 951 (1984), which affirmed the order granting an award of alimony as recompense for contributions to an educational degree.

**4.** We note that Mrs. Bold did not request equitable relief in the divorce complaint. Generally, an economic claim is forfeited if it is not presented in a complaint and preserved for resolution before a divorce is granted. *See* Pa.R.Civ.P. 1920.13, 1920.72. In this case, however, the complaint was filed and the divorce was granted before our decision in *Lehmicke, supra.* Consequently, we will examine the merits of the order granting equitable relief to Mrs. Bold.

award of reimbursement alimony is not properly before this Court for review. Although *Hodge* was applied in the proceedings before the master, Mrs. Bold has failed to raise the issue of reimbursement alimony in her appeal from the order of the lower court. Because the issue is not properly before us, any discussion concerning the effect of the *Hodge* decisions would be improper.

We turn then to question the propriety of the award as one in the nature of an equitable reimbursement. An equitable award to a spouse who has contributed to the other's advanced degree is a remedy which has only recently been recognized by our Court. In *Lehmicke v. Lehmicke*, 339 Pa.Super. 559, 489 A.2d 782 (1985), this Court[5] determined that, in a proper case, Section 401(c) of the Divorce Code permitted the trial court to fashion an equitable remedy which would reimburse the working spouse for contributions to the non-working student spouse. Underlying the decision in *Lehmicke* was a notion of fairness; where one spouse's contributions to the marriage include financial support toward the education of a non-working spouse, it would be unfair and inequitable to deny reimbursement for the educational contributions.

*Lehmicke* gave approbation to an award of equitable reimbursement. A majority in *Lehmicke*, however, was unable to determine what expenses were to be reimbursed. Writing in support of the majority's decision to remand the case for further consideration, Judge Brosky opined that a working spouse was entitled to reimbursement for all financial contributions—household expenses and educational costs—incurred while the other pursued a course of education. Underpinning this position was the theory that an award to a working spouse "is in the nature of recompense for [a spouse's] contribution and ought to relate to it."

5. The opinion in *Lehmicke* was authored by Judge Brosky with Judge McEwen concurring in the result and Judge Wieand concurring and dissenting. Judge Wieand agreed with Judge Brosky that pursuant to Section 401(c) the Court may fashion an equitable remedy to compensate the contributing spouse but disagreed with him as to the scope and application of that remedy.

*Lehmicke,* 339 Pa.Super. at 568, 489 A.2d at 787. In his dissent from the decision to remand, Judge Wieand found no evidence that the working spouse directly contributed to the cost of the student spouse's education. Emphasizing that the parties owed an equal duty of support, Judge Wieand reasoned:

> The duty of support is imposed by rule of law on both spouses. Compliance with this legal duty does not result in unjust enrichment to the other. Marriage is for better or worse. It is not entered with a conscious intent that at some future time there will be an accounting of and reimbursement for moneys contributed to the support of the family. To inject such a concept would, in my judgment, have far-reaching and unfortunate consequences. If I am correct in my view regarding the duty of spousal support, then it is difficult to perceive good reason for creating an exception which would reimburse a spouse for support contributed while the other is attending an institution of higher learning or otherwise obtaining advanced training.
>
>     \*     \*     \*     \*     \*     \*
>
> [A] nonworking spouse is liable to reimburse a working spouse only for sums advanced in excess of the legal duty of support imposed by law upon the working spouse. In most cases where the nonworking spouse is engaged in obtaining an education, this will be the amount contributed by the working spouse to the cost of educating the other spouse. Such a limit on the right to obtain restitution on equitable grounds is consistent with the contract of marriage, the legal duty of spousal support, and the purpose of the Divorce Code to effectuate economic justice between the parties upon divorce.

*Lehmicke v. Lehmicke,* 339 Pa.Super. 559, 573–574, 489 A.2d 782, 790 (1985) (Wieand, J., Concurring and Dissenting) *cited with approval in Hodge v. Hodge,* 513 Pa. 264, 271, 520 A.2d 15, 18 (1986).

    ■ Having carefully considered the standards proposed in *Lehmicke,* we are in agreement with the view expressed

by Judge Wieand. Marriage is not a business enterprise which requires a strict economic accounting for all financial aid rendered during its course. Rather, each party owes the other a duty of support. Accordingly, principles of equity will intervene only when one party has been unjustly enriched by financial contributions rendered which exceed that imposed by the law.

■ Instantly, the evidence indicates that Mrs. Bold did not contribute to the cost of Mr. Bold's academic degree. While pursuing a degree, Mr. Bold received educational benefits from the Veterans Administration in excess of $12,000, he obtained a student loan in the amount of $1,187.15, and he earned approximately $16,000 at various jobs. The evidence also shows that Mr. Bold's educational costs were approximately $14,300. Although Mrs. Bold worked and contributed to her husband's support while he was attending school, her contributions did not exceed that required by the law for the benefit of the family. Because the evidence fails to establish that Mr. Bold was unjustly enriched by his former spouse's contributions, we conclude the court erred in fashioning an equitable remedy pursuant to Section 401(c) of the Divorce Code. Accordingly, the order directing that Mr. Bold pay appellee the sum of $33,000 is vacated.

### B.

Secondly, Mr. Bold claims the court erred in forcing him into a "buy-out" of his former spouse's interest in the marital house. In addition, Mr. Bold contends the court erred in failing to credit him for making post separation payments which preserved that asset. We agree.

■ A court may not resort to a buy-out remedy absent specific findings as to why the marital property cannot be divided. *Wolf v. Wolf,* 356 Pa.Super. 365, 375, 514 A.2d 901, 906 (1986), *citing, Barletta v. Barletta,* 506 Pa. 404, 485 A.2d 752 (1984). Instantly, the master failed to make any specific findings before recommending a buy-out arrangement. Upon review of the master's recommendation, the lower court recognized that specific findings were re-

quired under *Barletta,* yet failed to heed the mandate of that decision before approving the buy-out remedy. In light of this error by the court, the order regarding the equitable distribution of the marital property is reversed and the case is remanded for proceedings consistent with *Barletta* and *Wolf.*

## C.

Mr. Bold's final claim is a challenge to the order directing him to pay one-half of his former spouse's counsel fees. Specifically, Mr. Bold asserts that an award of counsel fees should not be assessed against him because his former spouse is financially independent and, in any event, she has received sufficient marital assets through distribution of the marital property.

■ A court may, of course, make an award of fees pursuant to its discretionary power. 23 P.S. § 401(b). The factors to be considered in making this determination include the size of the estate of the moving party, the value of counsel's services and the moving party's ability to pay. *Semasek v. Semasek,* 331 Pa.Super. 1, 14, 479 A.2d 1047, 1054 (1984), *order modified and affirmed,* 509 Pa. 282, 292 n. 4, 502 A.2d 109, 113 n. 4 (1985). In making an award, the lower court may also consider the distributive share of the moving party's estate. *See Campbell v. Campbell,* 357 Pa.Super. 483, 494, 516 A.2d 363, 369 (1986) (en banc). The paramount concern, however, is with placing the parties "on a par in defending their rights." *Dech v. Dech,* 342 Pa.Super. 17, 23, 492 A.2d 41, 44 (1985).

Given our determinations regarding the award of reimbursement equity and the division of the marital property, we believe that review of the award of counsel fees would be premature and speculative. Consequently, we decline to review the merits of the award of counsel fees.

## III. Appeal of Mrs. Bold

■ Notwithstanding our determination regarding the appeal of Mr. Bold, we find it necessary to examine and comment on the appeal of Mrs. Bold. In her appeal, Mrs. Bold claims only that the lower court abused its discretion

in rejecting the master's recommendation for a sixty-forty division of the marital property.[6]

In making an award of equitable distribution, we assume the lower court considered that it was also making an equitable award to Mrs. Bold in the amount of $33,000. Because we are vacating the equitable award, the lower court must redetermine a proper division of property, giving consideration to the factors listed in the Divorce Code, 23 P.S. § 401(d). *See Aletto v. Aletto,* No. 371 Pa.Super. 230, 242–243, 537 A.2d 1383, 1389 (1988).

## IV. Conclusion

For the reasons set forth, in the appeal of Mr. Bold at No. 1047 Philadelphia, 1987, and the cross-appeal of Mrs. Bold at No. 1226 Philadelphia, 1987, the decree of the court is reversed and vacated. The case is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

---

**6.** Although Mrs. Bold failed to file exceptions to the master's report, this issue has not been waived. *See Benson v. Benson,* 357 Pa.Super. 166, 515 A.2d 917 (1986) (exceptions need not be filed to preserve issues for appellate review when the court's decree modified the terms of the master's report and recommendation).