561 A.2d 788

**Mary Clair BROJACK, Appellee,**

v.

**David James BROJACK, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1989.

Filed July 12, 1989.

John J. Cerra, Carbondale, for appellant.

Joseph P. Lenahan, Carbondale, for appellee.

Before DEL SOLE, BECK and MONTGOMERY, JJ.

BECK, Judge:

This case raises, inter alia, the question of when a "buy out" remedy is appropriate in the context of equitable distribution of a marital residence.

Appellant David Brojack (husband) and appellee Mary Clair Brojack (wife) were married in 1976. Wife filed a complaint in divorce in August of 1983, which included claims for equitable distribution, alimony and counsel fees. Per stipulation of the parties, proceedings were bifurcated and the divorce was granted in October of 1985. On December 15, 1986, a hearing was held before the master and on December 4, 1987, the master filed a detailed report. Husband filed exceptions to the master's findings. These exceptions were denied and the trial court entered an order finding the net marital estate worth $58,850.00. He recommended an award of 55% to wife and 45% to husband. Wife was also awarded counsel fees in the amount of $3,000.00. This appeal followed.

Husband makes the following claims of error: (1) the master's findings of fact were not supported by the evidence; (2) the master abused his discretion by disregarding certain evidence; (3) the report of the master was not in conformity with the laws and rules of court; and (4) the master abused his discretion by his choice of a "buy-out" as a remedy.

In reviewing an order of equitable distribution, our consideration is limited to whether there has been an abuse of discretion or error of law. *Chaney v. Chaney*, 343 Pa.Super. 77, 493 A.2d 1382 (1985). In reviewing a master's report we must give fullest consideraton to the findings of the master who had an opportunity to observe the witnesses

and is the best judge of credibility. *Herwig v. Herwig,* 279 Pa.Super. 65, 420 A.2d 746 (1980).

Husband's first two claims of error center upon the trial court's acceptance of the master's recommendation made after an assessment of the evidence before him. Upon review of the record and the arguments raised by appellant in his brief, we find nothing to support the conclusion that the trial court erred in accepting the master's findings relative to equitable distribution. In this regard, we affirm the order of the trial court on the basis of its opinion.

■ Next, husband claims that the master erred in failing to comply with Pa.R.C.P. 1920.54(c), and the Divorce Code, Pa.Stat.Ann. tit. 23 § 404 (Purdon Supp.1988). He notes that under Rule 1920.54(c), a master's report treating a claim for equitable distribution must contain a separate section entitled "Division of Property" with the two sub-headings "Marital Property" (listing all property and including a proposed distribution discussing factors for distribution), and "Nonmarital Property." Husband notes that under Pa.Stat.Ann. tit. 23 § 404, the court, in entering a distribution order, must set forth the reasons for the distribution ordered. The information set forth should include, at a minimum: (1) what is available for distribution; (2) to whom the distribution is made; and (3) why the distribution is made. Appellant claims that the master's report failed to conform to the rule and the statute. We disagree. Upon review of the record, we find that the master's report is not deficient as the appellant would have us believe. The report clearly identifies the property, denotes its value and directs to whom it is to be distributed. The report also contains the reasons for the distribution. As the trial court noted, the master's report sets out its finding and conclusions in an orderly fashion, reflecting thoughtful analysis.

■ Finally, husband claims that the master erred in ordering husband to give wife a sum representing her interest in the marital home, stressing the impropriety of such a "buy-out" remedy in the matrimonial context. The husband owned the property prior to marriage and the

wife's interest was her share in the increase in value of the property during marriage. Husband relies upon *Barletta v. Barletta*, 506 Pa. 404, 485 A.2d 752 (1985) to support his position that a buy-out remedy is inappropriate in the instant action. Husband reads *Barletta* too broadly. Barletta concerned personal property and under the circumstance of that case the Pennsylvania Supreme Court required a distribution in kind of the personal property. It is unclear as to what remedy husband seeks. He certainly does not seek a distribution in kind of real estate. Furthermore, a distribution in kind of nondivisible real estate is impossible to achieve. It is clear that he is not requesting that the court order a sale of the real estate and a distribution of the proceeds. The real estate is titled in his name and he nowhere indicates that the court should have ordered it sold. It appears that he is using the *Barletta* shield inappropriately to complain about the wife's entitlement to her interest in the increase in value of the property during marriage. See *Anthony v. Anthony*, 355 Pa.Super. 589, 514 A.2d 91 (1986) (Marital property includes accretion in value of spouse's premarital property between dates of marriage and separation or divorce.). It further appears that he is indirectly complaining that the debts encumbering the home should be viewed as marital debts and not as encumberances on the real estate. Since husband did not directly challenge the award of the increased value of the home to the wife and did not directly challenge the master's conclusions that the encumberances on the property were not marital debts we do not address those issues.

Even if husband had a legitimate *Barletta* claim, which he does not, we point out that the *Barletta* Court itself concluded: "we are not saying that the remedy of ordering a buy-out is prohibited by statute." 506 Pa. at 409, 485 A.2d at 754. As to personal property, the *Barletta* court found that it should have been divided between the parties and not distributed to one spouse because the personal property "was readily severable and we believe capable of being divided without destroying its relative value." 506 Pa. at 408, 485 A.2d at 754. The assumption underlying

*Barletta* is that the spouse would have to sell the personalty in order to satisfy the obligation under the equitable distribution order.

After *Barletta,* the Superior Court decided *Bold v. Bold,* 374 Pa.Super. 317, 542 A.2d 1374 (1988). This Court considered a husband's claim that the trial court erred in forcing him into a "buy-out" of his former spouse's interest in the marital home. The panel, without recognizing the very real difference between personalty and realty, noted that under *Barletta* and *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986), "a court may not resort to a buy-out remedy absent specific findings as to why the marital property cannot be divided." *Bold,* 374 Pa.Super. at 322, 542 A.2d at 1379. As neither the master nor the trial court in *Bold* made any specific findings as to why the marital residence could not be divided, the panel remanded the case, directing the trial court to proceed in accordance with *Barletta* and *Wolf.*

The instant case is clearly distinguishable from *Bold.* Here the master examined the status of both husband and wife in regard to the marital residence. In his report, the Master stated:

In this case, the parties agree and the evidence conclusively establishes that the Defendant (husband) alone purchased the real estate in question many months before the parties married. As for the home itself, 70% of the home was constructed prior to marriage. The Master finds that the Plaintiff (wife) does not have title to the real estate or the improvement thereon, Defendant does. However, Plaintiff does have an interest recognized by law. Plaintiff's interest is statutory only and consists of an equitable portion of the increase in value of the home after the date of the marriage. This being the case, any debts incurred by the Defendant for construction of the home are his debts alone and not marital property. All parties agree that the Plaintiff at no time executed any debt or loan document. Defendant owns the home and is free to sell the home or dispose of it in any way he sees

fit. The Plaintiff's interest in the home is statutory and is restricted to the increase in value of same—Plaintiff's interest is not as a titleholder.

The Master went on to list the various items to be included in the marital estate, including the $21,000 representing the increased value of the home subsequent to the marriage. The Master concluded the total marital estate was valued at $58,000 with 55% apportioned to the wife and 45% to the husband.

Based upon the foregoing, we believe that the Master in this case made the requisite specific findings as to why the marital residence should not be divided. The Master clearly characterized the different interests which husband and wife held in the marital residence. As the Master noted, the wife's interest was purely statutory, whereas the husband held the title to the home. Given these interests, it is unclear what viable option other than a "buy out" of wife's statutory interest husband desired.

We conclude that the master's findings indicate that a "buy out" of wife's statutory interest was warranted as the only viable solution here. By virtue of his interest, husband alone has the option of selling the home, or otherwise disposing of it. The "buy out" remedy was, therefore, clearly appropriate. We fail to see how any remedy other than a "buy out" could be applicable to real estate owned by the husband which, by its very nature, may not be divided and distributed.

Contrary to husband's reasoning, this case does not present the problems which faced the Court in *Barletta*. The *Barletta* Court was concerned that in a declining market, the equitable distribution order might force the spouse to sell the personal property at less than the market value. In the instant case, however, we are dealing with real property, which can usually be subjected to a mortgage and thereby become a source of fluid funds.

The order of the trial court is affirmed.