J. A02036/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TAMARA K. KNIGHT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PATRICK G. KNIGHT, | : | No. 1079 WDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Decree Entered June 26, 2019,
in the Court of Common Pleas of Greene County
Civil Division at No. No. 533 A.D. of 2016

| | | |
|---|---|---|
| TAMARA K. KNIGHT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1125 WDA 2019 |
| | : | |
| PATRICK G. KNIGHT | : | |

Appeal from the Decree Entered June 26, 2019,
in the Court of Common Pleas of Greene County
Civil Division at No. 533 A.D. of 2016

| | | |
|---|---|---|
| TAMARA K. KNIGHT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1214 WDA 2019 |
| | : | |
| PATRICK G. KNIGHT | : | |

Appeal from the Order Dated July 10, 2019,
in the Court of Common Pleas of Greene County
Domestic Relations at No. 196 DR 2009

J. A02036/20

BEFORE:  SHOGAN, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 16, 2020**

In these consolidated cross-appeals docketed at No. 1079 WDA 2019 and No. 1125 WDA 2019, Patrick D. Knight ("Husband") and Tamara K. Knight ("Wife"), respectively, challenge the trial court's equitable distribution of the marital estate in the divorce proceedings between them.[1]  Husband's and Wife's consolidated cross-appeals have been consolidated with Wife's appeal of the trial court's July 10, 2019 order that terminated her spousal support and that this court docketed at No. 1214 WDA 2019.  We affirm the divorce decree.  We reverse the July 10, 2019 order that terminated Wife's spousal support.

The record reflects that Husband and Wife married on August 4, 1984. Wife initiated these proceedings by filing a complaint in divorce on July 5, 2016.  Wife's claims for divorce, equitable distribution, alimony *pendent lite*, spousal support, alimony, counsel fees, costs, and expenses proceeded before a master.  Following a three-day hearing, the master filed a report and

---

[1] We note that in his notice of appeal, Husband purports to appeal from the trial court's June 25, 2019 order approving and adopting the master's report and recommendations.  The final, appealable order in divorce litigation, however, is the divorce decree.  *Wilson v. Wilson*, 828 A.2d 376, 378 (Pa.Super. 2003).  We have corrected the caption of Husband's appeal docketed at No. 1079 WDA 2019 to reflect that his appeal is from the divorce decree entered on June 26, 2019.

recommendations on August 1, 2018 ("master's report"). Both parties filed exceptions. The trial court then directed the parties to file proposed findings of fact, conclusions of law, and a proposed order. The parties complied. The trial court then made the following findings of fact:

> Neither Party has been previously married, and all surviving children born of this marriage are adults.
>
> Wife, born July 30, 1963, resides at 430 Patterson Run Road, Waynesburg, Pennsylvania. Wife has a High School Diploma, having graduated in 1981. Following high school she attended nine months of post-secondary education in Morgantown, West Virginia, at the conclusion of which she received a dental assistant certificate. Wife, however, never secured employment in that field. After marriage, Wife worked for a number of years for David Knight, her father-in-law, at "Knight's Market" in Jefferson, Pennsylvania. While Wife was predominately a "stay-at-home" wife and mother, she did, at intervals, work at various other unskilled labor jobs. At the time of hearing held in this matter, Wife was employed by Stallion Oilfield Services, as an accounts receivable clerk, with an annual salary of $24,630. Wife secured employment with Stallion Oilfield Services in 2015.
>
> Husband, born January 5, 1962, resides at 1572 Jefferson Road, Jefferson, Pennsylvania, 15344, which is the marital residence. Husband has a High School Diploma, having graduated in 1980. Husband is employed by Southwestern Pennsylvania Water Authority, where he has been employed since 1982. At the time of hearing, evidence was presented which showed that Husband had gross earnings from his employment of $85,300 for the 2016 tax year and $96,424 for the 2017 tax year. Husband also receives $100 per month for his services as a board member on the Southwestern Pennsylvania Water Authority Board, and $450 per month rental income from a rental property located at 200 Pine Street, Jefferson,

Pennsylvania, which was purchased during the marriage.

The parties married in August 1984, and lived in a home that Husband owned in Khedive, Pennsylvania. Subsequently, this home was sold and on September 4, 1992, the parties, using the proceeds from the sale of the Khendive residence (approximately $32,500), purchased, with Husband's parents (David G. Knight and Rose Marie Knight), the marital residence located at 1572 Jefferson Road, Jefferson, Pennsylvania, which included a farmhouse and 84.33 acres of land. Husband's Father offered to pay the remaining purchase price in order that the parties would not need to obtain a mortgage. Therefore, he and his wife's name was included on the deed. Husband's Father and Mother, however, never resided on the property. By deed dated April 13, 2009, the parties and Husband's father obtained from Consolidation Coal Company a 26.976 acre tract of land that adjoins the 1572 Jefferson Road property for Consol mining under 84.33 acres of the 1572 Jefferson Road property. Therefore, the marital residence now consists of 111.31 acres.

During the marriage, and on July 31, 2006, a rental property, located at 200 Pine Street, Jefferson, Pennsylvania was purchased and conveyed to Husband and his father. This property, at the time of the hearing, was leased for $400.00 per month to a floral shop, which occupied the top floor. The bottom floor or garage area was rented as vehicle storage, with a storage charge of $25.00 per month per vehicle. At the time of hearing, Husband was receiving $50 per month for storage rental of two (2) vehicles.

In acquiring the rental property, Wife, Husband, and Husband's father executed a mortgage document, on July 14, 2006, encumbering the marital residence for $20,000.00. The original settlement agreement for the purchase of the rental property prepared listed the borrowers (purchasers) of the property as Husband and Wife. On July 28, 2006, Husband contacted the

attorney handling the real estate transaction and requested that the settlement sheet and Deed be amended to delete Wife's name from both documents and instead add his father's name to the documents. Wife was unaware of Husband's action in this regard. Husband has received all income from the rental property and the loan secured on the marital residence has been satisfied in full by the parties. The marital residence at the time of hearing had no mortgage.

On November 26, 2007, the parties and Husband's Father (a Widower) entered into an Oil and Gas Lease with Atlas America for the 84.33 acres at the 1572 Jefferson Road property.

On October 31, 2007, Husband filed for divorce. Wife moved out of the marital residence approximately September or November 2008 and sublet an apartment from her friend, Donna Koller, in Waynesburg, until approximately May 2009. In June 2009, Wife moved into her brother's trailer at 430 Patterson Run Road, Waynesburg, Pennsylvania. In July 2009, Wife purchased the property from her brother for $25,000. The property is comprised of two acres of land and the 1980 trailer. Wife continued to reside at that premise until the trailer was destroyed by fire in August 2011.

As a result of the fire, Wife received an insurance settlement check in the amount of $20,000.00. Husband cleared the burnt debris and developed rental lots on the acreage for the placement of camper trailers by pipeline workers. Husband provided to Wife the camper trailer rental income received from the rentals during the time frame the parties used the property for camper unit rental.

After the trailer burned, Husband and Wife discussed Wife moving back to the farm, and Husband acknowledged that Wife could have moved back to the farm at that time. Husband supported Wife's decision to partially move in with her Mother to assist with her

care, and partially live at the marital residence, limited usually to week-ends.

On August 25, 2011, the parties began marriage counseling with Keith L. Reider, Ed.D. This counseling lasted approximately four (4) months. On November 22, 2001, Husband purchased new wedding rings which he gave to Wife. Wife at this time continued primarily to live with her Mother. Nonetheless, the parties vacationed together with their family, attended community outings, and participated in everyday familial interactions, including intervals of cohabitation at the marital residence.

On May 31, 2012, while attending a "Steam Show" with their grandson, the parties had a verbal altercation, which resulted in the parties leaving by separate modes of transportation, and Wife returning her wedding rings to Husband.

Wife resumed primary residency with her Mother. Nonetheless, the parties continued to eat meals together, attend movies and concerts together, have sexual relations, and accompany one another to family events and vacations.

In December 2015, Wife moved back into the marital residence permanently. The move to the marital residence initially was to be temporary, due to relatives coming to stay at the home of Wife's Mother over the Holidays, which resulted in overcrowding. Wife, however, remained at the marital residence until she filed her Complaint in Divorce July 5, 2016. She left the marital residence permanently on July 28, 2016. On December 21, 2016, [the trial c]ourt entered an Order, by stipulation of the parties, which directs Husband to pay Wife $1,300 per month in spousal support. This Order remains valid this date.

Prior to Wife filing for divorce, and on June 25, 2016, a mobile home was purchased from the Carl Barciesi Estate at auction and placed on the 430 Patterson Road Property for Wife. Although the sales contract

> lists the buyers as [Husband and Wife], it is undisputed that the parties and Husband's Father attended the auction and Husband's Father paid by check the full purchase price with his personal funds.
>
> During the summer of 2017, the parties and Husband's Father entered into an oil and gas pipeline right-of-way conveyance relative to the marital residence property[.] The parties received $150,000.00 as consideration for the conveyance. Husband's Father received $75,000.00 for his one-half interest in the property and Husband and Wife each received $37,500.00 their one-fourth (¼) interest of the proceeds received pursuant to this agreement.

Trial court opinion and order, 6/25/19 at 4-11.

On June 25, 2019, the trial court approved and adopted the master's report by opinion and order entered June 25, 2019. The trial court then entered the divorce decree on June 26, 2019.

On July 10, 2019, and prior to the expiration of the 30-day appeal period set forth in Pa.R.A.P. 903(a), the trial court entered an order that terminated and vacated Wife's $1,300 per month spousal support[2] due to entry of the divorce decree. (Order of court, 7/10/19.[3]) On July 10, 2019, Husband filed his notice of appeal; on July 23, 2019, Wife filed her notice of cross-appeal of the divorce decree. By separate orders entered July 29, 2019, the trial court

---

[2] The record reflects that the trial court, upon stipulation of the parties, entered a spousal support order on December 21, 2016 that required Husband to Pay Wife $1,300 per month in spousal support. (Order of court, 12/21/16.)

[3] The July 10, 2019 order also noted that at the time that the trial court terminated Wife's spousal support, Husband had overpaid Wife support in the amount of $1,141.98. (Order of court, 7/10/19.)

ordered Husband and Wife to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 5, 2019, Husband filed his Rule 1925(a) statement.

On August 9, 2019, the parties appeared before the trial court on Wife's petition for special relief to reinstate spousal support. The trial court took the petition under advisement. (Trial court order, 9/30/19.) Also on August 9, 2019, Wife filed a notice of appeal of the July 10, 2019 order terminating her spousal support, which this court docketed at No. 1214 WDA 2019. By **per curiam** order entered August 13, 2019, this court **sua sponte** consolidated Husband's and Wife's cross-appeals of the divorce decree. (Order of court, 8/13/19.) On August 14, 2019, Wife filed her Rule 1925(b) statement with respect to her cross-appeal of the divorce decree.

Thereafter, on August 22, 2019, this court entered a **per curiam** order consolidating Wife's appeals docketed at No. 1125 WDA 2019 and No. 1215 WDA 2019 as cross-appeals to Husband's appeal docketed at No. 1079 WDA 2019. On September 5, 2019, the trial court filed its Rule 1925(a) opinion with respect to the parties' challenges of the divorce decree. In that opinion, the trial court relied on its June 25, 2019 opinion and order that approved and adopted the master's report. (Trial court Rule 1925(a) opinion, 9/5/19.)

On September 11, 2019, the trial court ordered Wife to file a Rule 1925(b) statement with respect to her appeal of the July 10, 2019 order

that terminated her spousal support. Wife timely complied. On September 30, 2019, the trial court filed its Rule 1925(a) opinion with respect to Wife's appeal of the July 10, 2019. There, the trial court opined that because Wife filed her notice of appeal of the July 10, 2019 order before it ruled on her petition to reinstate spousal support, it was divested of jurisdiction and, therefore, it refrained from issuing an advisory opinion. (Trial court Rule 1925(a) opinion, 9/30/19 at unnumbered pages 4-5.)

With respect to his appeal of the divorce decree, Husband raises the following issues:

1. The Master ordered [Husband] to buy the real estate interest of [Wife] at values determined by the Master. Husband objects to having to purchase [] Wife's marital interest in the two pieces of real estate. The [trial] court should have directed the marital portion being an undivided one-half interest in both pieces of surface real estate to be sold at public auction and the proceeds distributed according to the [trial] court's order.

2. [Husband] objects to the valuations placed on the two pieces of real estate in the marital estate; however, if the [trial] court simply sells the properties sold at public sale and the proceeds distributed; then there is no objection.

3. The [trial] court's acceptance of the Master's Report failed to include a marital asset, being the $20,000 in fire insurance proceeds that was paid to [] Wife during the marriage and added to the equitable distribution of assets.

4. The [trial] court failed to treat [Husband's] father'[s] loan of the monies to [Husband]

needed to purchase a trailer for [Wife] as an advancement against equitable distribution.

5. The [trial] court failed to treat [Husband's] labor and expenses in setting up the replacement trailer (to the one that burned), advanced by [Husband], as an advancement against equitable distribution.

6. The [trial] court erred in allowing two items of the marital estate's real estate be divided on a 50/50 basis but found that the third piece of real estate, being the parties' oil and gas interests, should be divided on a 55/45 basis[Footnote 1].

> [Footnote 1] This error was raised by Husband's prior counsel. Upon review of the record, [Husband] has chosen not to brief this issue.

Husband's brief at 70.[4]

Wife raises the following issues for our review:

[1.] Did the trial court erroneously determine that the parties['] interest in their rental property was only 50 [percent] of the value as Husband underhandedly placed the property in his name and his Father's without Wife's knowledge or consent?

[2.] Should Wife receive 60 [percent] of the marital estate rather than 55 [percent] as Husband received the 111.31 acre farm, the rental property worth $80,000.00, the most valuable personal assets and he earns more than four times the income as Wife?

_____

[4] We note that Husband appended the trial court's opinion and the master's report to the beginning of his brief. Pennsylvania Rule of Appellate Procedure 2111 sets forth the order of the contents of an appellant's brief and provides that the relevant opinions are to follow the short conclusion stating the precise relief sought. *See* Pa.R.A.P. 2111(a)(10). Husband violated Rule 2111(a)(10).

[3.] After a 27[-]year marriage where Wife essentially was a dependent spouse, is Wife entitled to alimony sufficient to cover her basic needs and for a period of time until she is eligible to collect retirement benefits?

[4.] Should the trial court have issued the order terminating support 30 days after the opinion and order was issued to ensure there would be no appeal? Alternatively, should the divorce decree have included a provision that any existing spousal support order shall hereafter be deemed an order for alimony pendent lite if any economic claims remain pending?

Wife's brief at 5 (full capitalization omitted).

All of Husband's issues and Wife's first and second issues challenge equitable distribution. A trial court has broad discretion when fashioning an award of equitable distribution. ***Dalrymple v. Kilishek***, 920 A.2d 1275, 1280 (Pa.Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Smith v. Smith***, 904 A.2d 15, 19 (Pa.Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. ***Id.*** This court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Wang v. Feng***, 888 A.2d 882, 887 (Pa.Super. 2005). In determining

the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. *Id.* "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Schenk v. Schenk*, 880 A.2d 633, 639 (Pa.Super. 2005) (citation omitted).

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Childress v. Bogosian*, 12 A.3d 448, 445-446 (Pa.Super. 2011) (quotation marks and internal citations omitted).

In his first and second issues, Husband challenges the valuations of the properties that he was awarded; specifically, the rental property at 200 Pine Street ("rental property") and the marital residence ("marital residence") (collectively, the "properties"). Husband also contends that because the properties were jointly owned with Husband's father,[5] they should have been valued as a divided one-half interest for purposes of equitable distribution. Husband further complains that the trial court abused its discretion in ordering

---

[5] We note that the record reflects that Husband and Wife purchased the marital residence jointly with Husband's parents. Husband's mother has since passed away.

that he buy Wife out of her interest in the properties. In her first issue, Wife complains that because Husband and his father fraudulently removed Wife's name from the deed of the rental property without her knowledge, she should have received one-half of its entire value, as opposed to one half of the one-half divided interest that the trial court determined to be the marital interest.

With respect to valuations of the properties, Husband first claims that because he "would never pay" the values assigned, they are erroneous. (Husband's brief at 78.) Such a claim falls far short of producing the clear and convincing evidence necessary to support a finding of an abuse of discretion. "Clearly, it is within the trial court's powers to assign a value to the marital home or to equitably divide the value of the marital residence between the parties. However, the valuations should be made as close as possible to the property distribution date." *Powell v. Powell*, 577 A.2d 576, 583 (Pa.Super. 1990)

Nevertheless, we note that the record reflects that Husband and Wife retained their own appraisers. Wife retained Gwen Nicholson who appraised both properties under two approaches – the sales comparison approach and the cost approach. (Notes of testimony, 1/10/18 at 6-36.) Husband retained Gregory Sprowls to appraise the marital residence, but he did not retain an appraiser to value the rental property. Mr. Sprowls appraised the marital residence under the sales comparison approach and the cost approach. (**Id.**

at 100-124.) Both appraisers submitted appraisals of the marital residence and testified at length at the master's hearing. Ms. Nicholson valued the marital residence at $375,000 under the sales comparison approach and $400,000 under the cost approach. Mr. Sprowls valued the marital residence at $235,000 under the sales comparison approach and $239,477 under the cost approach. The master accepted Ms. Nicholson's appraisal of $375,000 under the sales approach with respect to the marital residence. (Master's report, 8/1/18 at 11,[6] ¶ 14).

With respect to the rental property, Ms. Nicholson utilized the sales comparison approach and valued the rental property at $80,000. Husband did not offer a relevant appraisal of the rental property[7] and did not present any testimonial evidence of such value at the hearing. The master accepted Ms. Nicholson's appraisal of the rental property.

In adopting the master's report, the trial court noted that Husband's complaints regarding the appraised value of the marital residence amounted to an attack on the master's credibility determinations. (Trial court opinion, 6/25/19 at 39.) We agree and discern no abuse of discretion in the trial court's

---

[6] We note that the pages of the master's report are not numbered. For ease of reference, we assigned corresponding numbers to the unnumbered pages.

[7] The record reflects that Husband offered a June 25, 2009 appraisal of the rental property performed by Joseph Koval on behalf of Wife. At the hearing, Husband's counsel stated that he was not offering the June 25, 2009 appraisal to prove the value of the rental property, but, rather, to show that Wife obtained the appraisal at that time. (Notes of testimony, 1/9/18 at 128-129.)

adoption of the master's appraised value of the marital residence. With respect to the appraised value of the rental property, and notwithstanding the fact that Husband failed to present any evidence of its value, we discern no abuse of discretion in the trial court's adoption of the Wife's appraised value of the rental property.

Husband further complains that because Husband and Wife owned the properties[8] with Husband's father[9] and because their marital interest was a divided one-half interest of the whole, the value of the properties must be the divided one-half interest of the whole for equitable distribution purposes. By way of example, with respect to the marital residence, Husband contends that because the marital interest in the property was one-half of the $375,000 appraised value adopted by the trial court, the value of the marital residence for equitable distribution purposes must be $187,500, which must be divided and distributed between Husband and Wife. Because Husband cites to no legal authority to support his logic, and we certainly know of none, Husband

---

[8] We note that although Wife was not on the rental property deed, the master and the trial court determined that one-half of the rental property was marital property. We further note that the rental property deed reflects that Husband and his father own the property as joint tenants with the right of survivorship. (Notes of testimony, 1/10/18 at 14, 17, offering and then admitting into evidence as Exhibit E Wife's rental property appraisal report, 1/24/17 at 33.)

[9] The record reflects that the marital residence is deeded to Husband, Wife, and Husband's parents. The deed does not reflect the grantees' form of concurrent ownership. (Notes of testimony, 1/10/18 at 8, 11, offering and then admitting into evidence as Exhibit C Wife's marital residence appraisal report, 1/27/17 at 39.)

waives this aspect of his argument on appeal. *See Butler v. Illes*, 747 A.2d 943, 944-945 (Pa.Super. 2000) (holding claims waived for failure to set forth adequate argument concerning claim on appeal; argument lacked meaningful substance and consisted of mere conclusory statements; appellant failed to explain cogently or even tenuously assert how trial court abused its discretion or made error of law). Notwithstanding waiver, we note that title alone does not determine if an asset is marital property. *Fitzpatrick v. Fitzpatrick*, 547 A.2d 362, 367 (Pa.Super. 1988).

Husband next complains that the trial court abused its discretion when it ordered Husband to buy out Wife's interest in the properties. Husband suggests that the marital interests in the properties should have been sold at public auction and distributed. In support, Husband relies on *Barletta v. Barletta*, 485 A.2d 752 (Pa. 1984), and also cites to *Brojack v. Brojack*, 561 A.2d 788 (Pa.Super. 1989).

*Brojack* summarized *Bartletta* and its progeny as follows: "*Barletta* concerned personal property and under the circumstances of that case the Pennsylvania Supreme Court required a distribution in kind of the personal property." *Brojack*, 561 A.2d at 789. "[A] distribution in kind of nondivisible real estate is impossible to achieve." *Id.*

> As to personal property, the *Barletta* court found that it should have been divided between the parties and not distributed to one spouse because the personal property "was readily severable and we believe capable of being divided without destroying its relative value." 506 Pa. at 408, 485 A.2d at 754. The

> assumption underlying ***Barletta*** is that the spouse would have to sell the personalty in order to satisfy the obligation under the equitable distribution order.
>
> After ***Barletta***, the Superior Court decided ***Bold v. Bold***, 374 Pa.Super. 317, 542 A.2d 1374 (1988). This Court considered a husband's claim that the trial court erred in forcing him into a "buy-out" of his former spouse's interest in the marital home. The panel, without recognizing the very real difference between personalty and realty, noted that under ***Barletta*** and ***Wolf v. Wolf***, 356 Pa.Super. 365, 514 A.2d 901 (1986), "a court may not resort to a buy-out remedy absent specific findings as to why the marital property cannot be divided." ***Bold***, 374 Pa.Super. at 322, 542 A.2d at 1379. As neither the master nor the trial court in ***Bold*** made any specific findings as to why the marital residence could not be divided, the panel remanded the case, directing the trial court to proceed in accordance with ***Barletta*** and ***Wolf***.

***Brojack***, 561 A.2d at 790.

Here, Husband claims that the trial court abused its discretion in requiring Husband to buy Wife out of the properties because neither the trial court nor the master made specific findings as to why the marital interests in the properties could not be sold at auction as required by ***Barletta*** and its progeny. As noted by the trial court, however, "the [m]aster's distribution of the property is cognizant of [Husband's f]ather's interest in the property and the distribution is only to the marital interest of same." (Trial court opinion, 9/25/19 at 38.) Indeed, in cross-examining Wife's appraiser, Husband's counsel noted, and Wife's appraiser agreed, that Husband's father's interest cannot be sold by the master. (Notes of testimony, 1/10/18 at 24-25.) Therefore, this claim lacks merit.

With respect to the rental property, Wife claims that she is entitled to one-half of its $80,000 appraised value because Husband and his father perpetrated a fraud on her when they removed her name from the deed immediately after the three purchased the property in 2006. Because the appeal before us concerns equitable distribution, we decline Wife's invitation to review the circumstances of an alleged fraud that occurred 14 years ago that purportedly involved Husband's father who was not a party to the underlying divorce proceeding and is not a party to this appeal.

In his third issue, Husband claims that the trial court and the master erred in not including within the marital estate the $20,000 that Wife received in insurance proceeds after fire destroyed her mobile home. Although the trial court agreed that the insurance proceeds were marital property, it found that the record was insufficient to determine whether those proceeds were spent on family and marital expenses or otherwise. (Trial court opinion, 6/25/19 at 45.) The trial court refused to speculate on how the proceeds were spent and rejected Husband's claim for want of evidence. (*Id.* at 44-45.) Indeed, in his appellate brief, Husband baldly asserts that "Wife kept the remainder of the proceeds" and provides no record citations to support that conclusion. (Husband's brief at 86-87.) We discern no abuse of discretion.

Husband addresses his fourth and fifth issues together. (*Id.* at 87-88.) Husband complains that the trial court failed to treat monies loaned to him by his father to purchase a mobile home for Wife, as well as Husband's labor in

setting up the mobile home, as an advance against equitable distribution. In his exceptions to master's report and recommendations, Husband states that the new trailer was purchased after the date of separation. (Husband's exceptions to master's report, 8/16/18 at 3, ¶ 7(a).) The trial court, therefore, determined that the mobile home was not marital property, but "a gift outside the marital estate to Wife." (Trial court opinion, 9/25/19 at 47.) We discern no abuse of discretion.

Husband has abandoned his final claim of error. (**See** Husband's brief at 70 n.1 (stating that "Husband has chosen not to brief this issue.").) Therefore, we now turn to Wife's remaining claims.

In her second issue, Wife contends that she should have been awarded 60 percent of the marital estate instead of 55 percent. To support her claim that the distribution scheme was not equitable, Wife cites to income disparity, standard of living disparity, the length of the marriage, her present inability to access the portion of Husband's pension that she was awarded, and her loss of health-care coverage through Husband's employer. (Wife's brief at 14.)

> We do not evaluate the propriety of the distribution order upon our agreement with the [trial] court['s] actions nor do we find a basis for reversal in the [trial] court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's

overall application of the [23 Pa.C.S.A. § 3502(a)[10]] factors [for consideration in awarding equitable

---

[10] The statutory factors relevant to equitable distribution are set forth as follows:

(1)     The length of the marriage.

(2)     Any prior marriage of either party.

(3)     The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4)     The contribution by one party to the education, training or increased earning power of the other party.

(5)     The opportunity of each party for future acquisitions of capital assets and income.

(6)     The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7)     The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8)     The value of the property set apart to each party.

(9)     The standard of living of the parties established during the marriage.

(10)    The economic circumstances of each party at the time the division of property is to become effective.

(10.1)  The Federal, State and local tax ramifications associated with each asset to be divided,

> distribution]. If we fail to find an abuse of discretion, the [o]rder must stand.

***Childress v. Bogosian***, 12 A.3d at 462 (some brackets in original; citations and extraneous quotation mark omitted). "The trial court has the authority to divide the award as the equities presented in the particular case may require." ***Id.*** (citation omitted).

In its report, the master thoughtfully considered the equitable distribution factors set forth in Section 3502(a) and recommended that Wife receive 55 percent and Husband receive 45 percent of the marital estate. (Master's report at 22.) In making that determination, the master explained that

> although the parties worked along-side one another in accumulating their marital estate, Husband had the greater earning capacity throughout the marriage and is in a better position to support himself through his interest in retirement and pension savings. It is the belief of the [m]aster that awarding a higher percentage of the calculated marital estate to Wife will effectuate economic justice between the parties as they move forward with their separate lives. All other factors previously discussed herein were also considered by the [m]aster in making this

---

> distributed or assigned, which ramifications need not be immediate and certain.
>
> (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
>
> (11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).

recommendation. Therefore, based on all of the testimony adduced at the hearing on this matter and after careful consideration of the statutory factors set forth in the Pennsylvania Divorce Code, the Master is convinced that this is the appropriate recommendation.

*Id.* at 22-23.

We have thoroughly reviewed the record in this case. The record supports the trial court's adoption of the master's report with respect to the statutory factors and the equitable distribution scheme. We discern no abuse of discretion.

In her third issue, Wife claims that the alimony award is inadequate. The record reflects that the trial court awarded Wife alimony of $500 per month for three years after entry of the divorce decree. Wife contends that she needs $1,300 per month for ten years.

> Following divorce, alimony provides a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution. An award of alimony should be made to either party only if the trial court finds that it is necessary to provide the receiving spouse with sufficient income to obtain the necessities of life. The purpose of alimony is not to reward one party and punish the other, but rather to ensure that the reasonable needs of the person who is unable to support herself through appropriate employment are met.
>
> Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. An award of alimony may be reversed where there is an apparent abuse of

> discretion or there is insufficient evidence to support the award.

*Kent v. Kent*, 16 A.3d 1158, 1161 (citation, internal citations, and quotation marks omitted).

In adopting the master's recommendation for alimony, the trial court noted that

> after review of Wife's [b]udget [s]heet, [it is] determined that Wife's expenses are inflated with items that are not necessities and/or the amounts for necessities are excessive, i.e[.], [v]acation, [h]oliday [e]xpenses, [e]ntertainment, and monthly clothing allowance.
>
> . . . . Taking these figures into consideration, coupled with the recommended distribution award, Wife's reasonable needs can be achieved by way of the equitable distribution award, her employment and the alimony award as determined by the [m]aster.
>
> . . . . Appropriate consideration was given by the [m]aster to all statutory factors,[11] including both

---

[11] When determining the propriety of alimony, the trial court must consider all of the following relevant statutory factors:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

- 23 -

(6)    The contribution by one party to the education, training or increased earning power of the other party.

(7)    The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8)    The standard of living of the parties established during the marriage.

(9)    The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10)  The relative assets and liabilities of the parties.

(11)  The property brought to the marriage by either party.

(12)  The contribution of a spouse as homemaker.

(13)  The relative needs of the parties.

(14)  The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15)  The Federal, State and local tax ramifications of the alimony award.

(16)  Whether the party seeking alimony lacks sufficient property, including, but not limited to,

[p]arties' employment, assets, and the equitable distribution award.

Trial court opinion, 6/26/19 at 30-31.

Our review of the record demonstrates that it supports the trial court's factual conclusions and the alimony award. We discern no abuse of discretion.

Wife finally claims that the trial court erred in terminating her spousal support effective upon entry of the divorce decree because all economic claims between the parties were not resolved. We agree. This court has explained that

> "[u]pon entry of a decree in divorce, any existing order for spousal support shall be deemed an order for alimony ***pendente lite*** if any economic claims remain pending." Pa.R.C.P. 1920.31(d). Alimony ***pendente lite*** ("APL") is defined as "[a]n order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. Pursuant to 23 Pa.C.S.A. § 3702, alimony ***pendente lite*** is allowable to either spouse during the pendency of the action.
>
> However, "[t]he award of APL is not dependent upon the status of the parties but on the state of the litigation. This means, in theory, that the APL

---

> property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.
>
> (17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b).

The duration of the alimony award must be reasonable under the circumstances. ***Id.*** at 3701(c).

> terminates at the time of divorce which usually concludes the litigation." ***DeMasi v. DeMasi***, 408 Pa.Super. 414, 597 A.2d 101, 104 (Pa. Super. 1991). In ***DeMasi***, our Court held that
>
> > a divorce is not final for purposes of APL until appeals have been exhausted and a final decree has been entered. Thus, while APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, APL will continue throughout the appeal process and any remand until a final [o]rder has been entered.

***Prol v. Prol***, 840 A.2d 333, 335 (Pa.Super. 2003) (some internal quotations and citations omitted; emphasis in original).

Here, the trial court abused its discretion when it terminated Wife's spousal support before the expiration of the 30-day appeal period during which period Husband filed an appeal challenging equitable distribution. As a result of Husband's appeal, the pendency of the economic claims between the parties remained and Wife was and is entitled to receive alimony ***pendente lite*** until appeals on those economic claims have been exhausted. Therefore, we vacate the trial court's July 10, 2019 order and remand for further proceedings.

Decree affirmed. July 10, 2019 order terminating Wife's spousal support vacated. Case remanded. Jurisdiction relinquished.

J. A02036/20

Shogan, J. joins this Memorandum.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/16/2020</u>